Joseph R. Saveri (SBN 130064)
Christopher K.L. Young (SBN 318371)
William W. Castillo Guardado (SBN 294159)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:   jsaveri@saverilawfirm.com
            cyoung@saverilawfirm.com
            wcastillo@saverilawfirm.com

*Attorneys for Individual and Representative Plaintiffs*
*E. Molly Tanzer and Jennifer Gilmore*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| E. MOLLY TANZER, an individual; and JENNIFER GILMORE, an individual.<br><br>  Individual and Representative Plaintiffs,<br><br>   v.<br><br>SALESFORCE, INC.<br><br>  Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED**<br><br>**CLASS ACTION** |

**TABLE OF CONTENTS**

OVERVIEW ...................................................................................................................................1

JURISDICTION AND VENUE ....................................................................................................1

PARTIES ........................................................................................................................................2

    A.  PLAINTIFFS....................................................................................................................2

    B.  DEFENDANT .................................................................................................................2

    C.  AGENTS AND CO-CONSPIRATORS ........................................................................2

FACTUAL ALLEGATIONS .........................................................................................................3

    A.  "The Pile" and "RedPajama" Contain Plaintiffs' and Class Members' Works ...............3

    B.  AI Models Require Datasets............................................................................................4

    C.  Salesforce Creates a Library of Pirated Books to Develop its Large Language Models ...............6

CLASS ALLEGATIONS .............................................................................................................10

CAUSE OF ACTION ...................................................................................................................12

DEMAND FOR JUDGMENT......................................................................................................13

JURY TRIAL DEMANDED .......................................................................................................14

Plaintiffs E. Molly Tanzer and Jennifer Gilmore (together "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class-action complaint ("Complaint") against Defendant Salesforce, Inc ("Salesforce").

**OVERVIEW**

1. Defendant Salesforce, Inc. pirated hundreds of thousands of copyrighted books to develop its XGen series of large language models ("LLMs"). The training dataset for these models—described as "legally compliant" by Salesforce—consists of the notorious RedPajama and The Pile datasets that contain copies of these unlawfully-obtained copyrighted books. Salesforce unlawfully downloaded, stored, copied, and used these datasets to develop the XGen series of LLMs.

2. Both RedPajama and The Pile contain the Book3 corpus, which contain hundreds of thousands of copyrighted books that were acquired without the authorization or consent of the authors.

3. Plaintiffs and Class members are authors. They own registered copyrights in certain books that were included in the RedPajama and The Pile datasets that Defendant downloaded, copied, stored, and used without their permission or compensation.

4. Plaintiffs and Class members never authorized Defendant to download, copy, store, or use their copyrighted works. Defendant has never compensated Plaintiffs and Class members for downloading, copying, storing, or using their copyrighted works.

5. Salesforce benefitted commercially from its acts of massive copyright infringement, including by securing contracts with enterprise customers for use of its LLMs, including through the Agentforce AI platform.

6. Through the above acts, Defendant has infringed Plaintiffs' copyrighted works, and it continues to do so by continuing to store, copy, use, and process the datasets containing copies of Plaintiffs' and the putative Class's copyrighted books.

**JURISDICTION AND VENUE**

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this case arises under the Copyright Act (17 U.S.C. § 501).

8. Jurisdiction and venue are proper in this judicial district under 28 U.S.C. § 1391(c)(2) because Defendant is headquartered in this district. Salesforce created the XGen series of large language

1  models. Defendant distributes these models commercially. Therefore, a substantial part of the events giving rise to the claim occurred in this District. A substantial portion of the affected interstate trade and commerce was carried out in this District. Defendant has transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of the illegal scheme and conspiracy throughout the United States, including in this District. Defendant's conduct has had the intended and foreseeable effect of causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

9.   Under Civil Local Rule 3-2(c), assignment of this case to the San Francisco Division is proper because this case pertains to intellectual-property rights, which is a district-wide case category under General Order No. 44, and therefore venue is proper in any courthouse in this District.

**PARTIES**

**A.   PLAINTIFFS**

10.   Plaintiff E. Molly Tanzer is an author who lives in Colorado. Ms. Tanzer owns registered copyrights in multiple books, including *Creatures of Will and Temper*.

11.   Plaintiff Jennifer Gilmore is an author who lives in Pennsylvania. Ms. Gilmore owns registered copyrights in multiple books, including *If Only*.

12.   A non-exhaustive list of registered copyrights owned by Plaintiffs is included as Exhibit A.

**B.   DEFENDANT**

13.   Defendant Salesforce, Inc. is a Delaware corporation with its principal place of business at 415 Mission St, 3rd Fl, San Francisco, CA 94105.

**C.   AGENTS AND CO-CONSPIRATORS**

14.   The unlawful acts alleged against Defendant in this class action complaint were authorized, ordered, or performed by the Defendant's respective officers, agents, employees, representatives, or shareholders while actively engaged in the management, direction, or control of the Defendant's businesses or affairs. The Defendant's agents operated under the explicit and apparent authority of their principals. Defendant and its subsidiaries, affiliates, and agents operated as a single unified entity.

15.   Various persons or firms not named as defendants may have participated as co-

conspirators in the violations alleged herein and may have performed acts and made statements in furtherance thereof. Each acted as the principal, agent, or joint venture of Defendant with respect to the acts, violations, and common course of conduct alleged herein.

## FACTUAL ALLEGATIONS

**A.      "The Pile" and "RedPajama" Contain Plaintiffs' and Class Members' Works**

16.     The Pile is a dataset curated by a research organization called EleutherAI for use in training AI models. In December 2020, EleutherAI introduced this dataset in a paper called "The Pile: An 800GB Dataset of Diverse Text for Language Modeling."[1] The paper provides a description of the Books3 dataset contained within The Pile:

> Books3 is a dataset of books derived from a copy of the contents of the Bibliotik private tracker … Bibliotik consists of a mix of fiction and nonfiction books and is almost an order of magnitude larger than our next largest book dataset (BookCorpus2). We included Bibliotik because books are invaluable for long-range context modeling research and coherent storytelling.[2]

17.     Bibliotik is one of a number of notorious pirate websites that also includes Library Genesis (aka LibGen), Z-Library (aka B-ok), Sci-Hub, and Anna's Archive. These pirate libraries have long been of interest to the AI-training community because they host and distribute vast quantities of unauthorized copyrighted material, including books. For that reason, these pirate libraries also violate the U.S. Copyright Act.

18.     The person who assembled the Books3 dataset, Shawn Presser, has confirmed in public statements that it represents "all of Bibliotik" and contains approximately 196,640 books.

19.     EleutherAI's website encourages the public to download The Pile dataset from a website known as "The-Eye." Anyone who downloads The Pile from The-Eye is therefore also downloading a copy of Books3.

20.     The Pile is also available for download from the "Hugging Face" website. Before October 2023, the Books3 subset of The Pile was available for download from Hugging Face as a standalone dataset. But in October 2023, the Books3 dataset was removed with a message that it "is defunct and no

---

[1] https://arxiv.org/pdf/2101.00027.pdf

[2] *Id.* at 3–4.

longer accessible due to reported copyright infringement."[3]

21. Books3 has also been included within another dataset known as RedPajama created by the company Together AI. Released in or around April 2023, the RedPajama dataset contained a subset called "Books" or "RedPajama-Books" that was actually a copy of the "Books3 dataset." The RedPajama dataset is available for download from Hugging Face. Before October 2023, the Books subset was "downloaded from Huggingface [sic]" when a user ran the script that automatically assembled the RedPajama dataset.[4] After the "Books3 dataset" was removed from Hugging Face in October 2023, the RedPajama dataset documentation also added a message that Books3 is defunct "due to reported copyright infringement."[5]

22. But before October 2023, anyone who downloaded the Red Pajama or The Pile datasets from Hugging Face was actually downloading a copy of the Books3 dataset.

23. Plaintiffs' copyrighted books listed in Exhibit A are among the works in the Books3 dataset. Below, these books are referred to as the **Infringed Works**.

**B.    AI Models Require Datasets**

24. A large language model ("LLM") is AI software designed to emit convincingly naturalistic text outputs in response to user prompts.

25. Though an LLM is a software program, it is not created the way most software programs are—that is, by human software programmers writing code. Rather, an LLM is *trained by* copying an enormous quantity of textual works and then feeding these copies into the model. This corpus of input material is called the *training dataset*.

26. Training consists of a multi-stage process (known as the training pipeline) that includes the acquisition and curation of the dataset, processing of the dataset, feeding the dataset into the model so that the model can extract the patterns and relationships from the protected expression contained therein; and further fine-tuning the model for more specialized uses with even more data.

---

[3] https://web.archive.org/web/20231127101818/https://huggingface.co/datasets/the_pile_books3

[4] https://web.archive.org/web/20230420075601/https://huggingface.co/datasets/togethercomputer/RedPajama-Data-1T

[5] https://web.archive.org/web/20240510231649/https://huggingface.co/datasets/togethercomputer/RedPajama-Data-1T

CLASS ACTION COMPLAINT

27. The first step in training the model is acquiring and curating the data that goes in to the model. Training an LLM is not only a function of quantity of data, but also of quality. The selection and curation of training data is therefore an important first step in training. Copyrighted books tend to be high-quality data for training LLMs.

28. During training, the LLM copies and ingests each textual work in the training dataset and extracts protected expression from it. During what is known as *pretraining*, the LLM progressively adjusts its output to more closely approximate the protected expression copied from the training dataset. The LLM records the results of this process in a large set of numbers called weights (also known as *parameters*) that are stored within the model. These weights are entirely and uniquely derived from the protected expression in the training dataset. Once a model is pretrained, it results in a trained model known as a *base* or *foundational* model.

29. During the development process of an LLM, engineers may also conduct experiments known as "ablation studies" that test the effect of certain data on the model. This can include, for example, determining whether there is a difference in the quality of a model's output if it is trained with books versus without. A dataset may be used to run such experiments but be excluded from the final training dataset of the model. Importantly, these datasets too may consist of copyrighted works, including books.

30. Once the LLM has copied and ingested the textual works in the training dataset and transformed the protected expression into stored weights, the LLM is able to emit convincing simulations of natural written language in response to user prompts. Whenever an LLM generates text output in response to a user prompt, it is performing a computation that relies on these stored weights, with the goal of imitating the protected expression ingested from the training dataset.

31. Throughout each step of the training pipeline, the same dataset may be used multiple times. Indeed, given the cost of developing an LLM, it is a ubiquitous practice to retain datasets for future use, whether that use is to pretrain other models, to perform ablations on a model, or to fine-tune an already trained base model. The implication is that if a dataset contains unlawfully-obtained copyrighted material, each step of the training pipeline may result in an unauthorized use (i.e., infringement) of that copyrighted work.

C.     **Salesforce Creates a Library of Pirated Books to Develop its Large Language Models**

32.    Salesforce, founded in 1999, provides cloud-based services to its clients, with a particular focus on sales and e-commerce.

33.    In March 2022, Salesforce released its CodeGen series of LLMs.[6] Salesforce admitted that "[a]ll variants of CODEGEN are firstly pre-trained on the Pile."[7] Within The Pile is the Books3 dataset containing Plaintiffs and Class members' works. Accordingly, Salesforce downloaded and stored a copy of The Pile containing Books3 before March 2022 and used it to develop and train its CodeGen series of LLMs.

34.    With this library of nearly 200,000 pirated books at its disposal, Salesforce decided to use Books3 for the development and training and of its next language model.

35.    In June 2023, Salesforce released the XGen series of LLMs in a blog titled, "Long Sequence Modeling with XGen: A 7B LLM Trained on 8K Input Sequence Length" ("XGen Blog").[8] This series consists of the XGen-7B-4K-base, XGen-7B-8K-base, and XGen-7B-{4K, 8K}-inst models. In its announcement, Salesforce provided a chart detailing the models' pre-training data, which admits that "RedPajama-Books" was one of the training datasets:

| Dataset name | Effective number of tokens (B) | Epochs | Sampling prop. (%) |
| --- | --- | --- | --- |
| RedPajama-CommonCrawl | 879.37 | 1 | 63.98 |
| RedPajama-GitHub | 62.44 | 1 | 4.54 |
| RedPajama-Books | 65.18 | 2.5 | 4.74 |
| RedPajama-ArXiv | 63.32 | 2 | 4.61 |
| RedPajama-StackExchange | 21.38 | 1 | 1.56 |
| C4 from 6 CC dumps | 191.5 | 0.2 | 13.93 |
| Wikipedia-English | 19.52 | 4 | 1.42 |
| Wikipedia-21 other languages | 62.04 | 2 | 4.51 |
| Pile_DM_Mathematics | 7.68 | 2 | 0.56 |
| Apex code from 6 CC dumps | 2.09 | 1 | 0.15 |
| **Total** | **1374.52** | | **100** |

---

[6] https://arxiv.org/abs/2203.13474

[7] *Id.*

[8] https://web.archive.org/web/20230628183232/https://blog.salesforceairesearch.com/xgen/

36. The RedPajama-Books dataset is a copy of the Books3 dataset that contains Plaintiffs and Class Members' copyrighted works.

37. At the same time that Salesforce announced the release of the XGen models, it uploaded the models to GitHub, a website where companies can provide access to open-source models and users can ask questions to its creators. On the day of the models' release, a user posed a question to Salesforce on the XGen GitHub page: "Hi, could you please release the training data too, to enable further research into the model behavior ?"[9] One day later, a user by the name "tianxie-9" responded:[10]

> Sorry that we are not able to release the training data. Most of our training data can be found in https://huggingface.co/datasets/togethercomputer/RedPajama-Data-1T, https://pile.eleuther.ai/ and https://huggingface.co/datasets/wikipedia. We used https://github.com/google-research/text-to-text-transfer-transformer#c4 to get more C4 data.

38. Tian Xie was a then-Salesforce employee listed as an author of the XGen Blog. In his response, he provided a link to the RedPajama dataset hosted on Hugging Face, and a link to Eleuther AI's website that contains a link to download the Pile from The-Eye. Mr. Xie therefore admits that the XGen models were trained on both The Pile and RedPajama.

39. Because Salesforce acquired these datasets before October 2023, Salesforce copied, stored, and used versions of The Pile and RedPajama containing Books3 to develop and train its XGen models.

40. Salesforces' transparency into the training data used for its XGen models was short-lived. Two months later, in or around September 2023, it deleted from its website the chart listing the training data for the models. All references to "RedPajama-Books" were removed. Instead, a new chart simply

---

[9] https://github.com/salesforce/xgen/issues/3

[10] *Id.*

listed the models as trained on "natural language data:"[11]

| Dataset name | Effective number of tokens (B) | Sampling prop. (%) |
|---|---|---|
| Natural language data | 1309.99 | 95.31 |
| Code data | 64.53 | 4.69 |
| **Total** | **1374.52** | **100** |

41. And on September 7, 2023, Salesforce published a paper titled, "XGen-7B Technical Report."[12] The report describes the training data for the XGen models as "[n]atural language data [that] is a mixture of publicly available data." It contains no reference to the Redpajama dataset being used to develop the XGen models.

42. Then, in a December 2023 blog titled "Developing the New XGen: Salesforce's Foundational Large Language Models," Salesforce claimed the models were trained on a "legally compliant dataset that was derived from diverse knowledge domains" (emphasis added).[13] This training dataset comprised a "vast volume of high quality data," and was a "massive and diverse dataset, drawing from public sources."[14] Salesforce no longer admitted to using RedPajama to develop its models.

---

[11] https://www.salesforce.com/blog/xgen/

[12] https://arxiv.org/abs/2309.03450

[13] https://engineering.salesforce.com/developing-the-new-xgen-salesforces-foundational-large-language-models/

[14] *Id.*

CLASS ACTION COMPLAINT

43. On October 21, 2024, Salesforce released the xGen-Sales model.[15] This "finely tuned model" "was created by refining [Salesforces'] most advanced large language models with human-in-the-loop reinforcement learning, using vast datasets from diverse sources."[16] Accordingly, xGen-Sales is a fine-tuned model powered by the XGen series of LLMs that infringe on Plaintiffs and Class members' works. Upon information and belief, the xGen-Sales model was developed and trained on the RedPajama and The Pile datasets. Salesforce commercialized these models by incorporating them into its Agentforce AI platform for enterprise customers.[17]

44. On May 2, 2025, Salesforce released the xGen-Small LLM—part of the XGen family of models.[18] The training data comprised "a wide spectrum of publicly available sources" and "natural language content."[19] Upon information and belief, Salesforce developed and trained the xGen-Small model with the RedPajama and The Pile datasets.

45. Salesforces infringed on Plaintiffs and Class members's copyrighted works on a massive scale. Salesforce downloaded these books from two datasets—The Pile and RedPajama—without authorization from or compensation to their authors. Salesforce then continued copying and storing the datasets, and used them to develop and train the XGen series of LLMs.

46. Upon information and belief, Salesforce used Plaintiffs and Class members' copyrighted works to train other models, including non-public models.

47. And, upon information and belief, the "high quality" and "natural language data" available from public sources that Salesforce used to develop its large language models is not limited to the Books3 dataset, but also potentially includes other known publicly available datasets containing unauthorized copies of copyrighted books.

---

[15] https://www.salesforce.com/blog/xgen-sales/
[16] Id.
[17] Id.
[18] https://www.salesforce.com/blog/xgen-small-enterprise-ready-small-language-models/
[19] Id.

48.     Even though Salesforce was internally using copyrighted books it obtained without authorization, compensation, or consent, its executives made statements ostensibly siding with the copyright holders.

49.     For example, in a January 2024 interview, Salesforce CEO Marc Benioff acknowledged that artificial intelligence companies "ripped off" training data to build their models, and that "all the training data has been stolen."[20] Benioff also stated, "There's a pretty great company to be built on a standardized set of training data that lets all these companies play a fair . . . game and let the content creators . . . get paid fairly for their work. And I think that bridge has not yet been crossed. And that's a mistake by the AI companies. Very easy to do."[21]

50.     Benioff is right—technology companies like Benioff's own Salesforce that use the intellectual property of copyright holders like Plaintiffs and Class members should fairly compensate them. And that is why Plaintiffs bring this lawsuit.

## CLASS ALLEGATIONS

51.     The "**Class Period**" as defined in this Complaint begins on at least October 15, 2022 and runs through the present. Because Plaintiffs do not yet know when the unlawful conduct alleged herein began, but believe, on information and belief, that the conduct likely began earlier than October 15, 2022, Plaintiffs reserve the right to amend the Class Period to comport with the facts and evidence uncovered during further investigation or through discovery.

52.     **Class definition**. Plaintiffs bring this action for damages and injunctive relief as a class action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of the following Class:

> **All persons or entities that own a registered United States copyright in any work that was downloaded, copied, stored, or used to develop any of Salesforce's large language models during the Class Period.**

53.     This Class definition excludes:

   a.     Defendant named herein;

   b.     any of the Defendant's co-conspirators;

---

[20] https://www.youtube.com/watch?v=JSlniwSmBuI

[21] *Id.*

      c.      any of Defendant's parent companies, subsidiaries, and affiliates;

      d.      any of Defendant's officers, directors, management, employees, subsidiaries, affiliates, or agents;

      e.      all governmental entities; and

      f.      the judges and chambers staff in this case, as well as any members of their immediate families.

54. **Numerosity**. Plaintiffs do not know the exact number of members in the Class. This information is in the exclusive control of Defendant. On information and belief, there are at least thousands of members in the Class geographically dispersed throughout the United States. Therefore, joinder of all members of the Class in the prosecution of this action is impracticable.

55. **Typicality**. Plaintiffs' claims are typical of the claims of other members of the Class because Plaintiffs and all members of the Class were damaged by the same wrongful conduct of Defendant as alleged herein, and the relief sought herein is common to all members of the Class.

56. **Adequacy**. Plaintiffs will fairly and adequately represent the interests of the members of the Class because the Plaintiffs have experienced the same harms as the members of the Class and have no conflicts with any other members of the Class. Furthermore, Plaintiffs have retained sophisticated and competent counsel who are experienced in prosecuting federal and state class actions, as well as other complex litigation.

57. **Commonality** and **predominance**. Numerous questions of law or fact common to each Class member arise from Defendant's conduct and predominate over any questions affecting the members of the Class individually:

      a.      Whether Defendant violated the copyrights of Plaintiffs and the Class when it obtained copies of Plaintiffs' Infringed Works, stored the Infringed Works, copied the Infringed Works, and used the Infringed Works to develop Defendant's LLMs.

      b.      Whether any affirmative defense excuses Defendant's conduct.

      c.      Whether any statutes of limitation limits the potential for recovery for Plaintiffs and the Class.

58. **Other class considerations**. Defendant has acted on grounds generally applicable to the

1   Class. This class action is superior to alternatives, if any, for the fair and efficient adjudication of this
2   controversy. Prosecuting the claims pleaded herein as a class action will eliminate the possibility of
3   repetitive litigation. There will be no material difficulty in the management of this action as a class action.
4   The prosecution of separate actions by individual Class members would create the risk of inconsistent or
5   varying adjudications, establishing incompatible standards of conduct for Defendant.

## CAUSE OF ACTION

### COUNT I

### Direct Copyright Infringement (17 U.S.C. § 501) against Defendant

59.  Plaintiffs incorporate by reference the preceding factual allegations.

60.  As the owners of the registered copyrights in the Infringed Works, Plaintiffs hold the exclusive rights to those books under 17 U.S.C. § 106.

61.  Salesforce downloaded, ingested, or otherwise acquired copies of the RedPajama and The Pile datasets containing Books3, which includes the Infringed Works.

62.  Salesforce stored copies of RedPajama and The Pile in its internal servers.

63.  To develop the XGen-7B-4K-base, XGen-7B-8K-base, and XGen-7B-{4K, 8K}-inst language models, Salesforce copied the RedPajama and the Pile datasets containing Books3 to develop these models and incorporate the datasets into the models' training dataset. Salesforce made multiple copies of these datasets containing Books3 during the development of the XGen series of LLMs.

64.  Upon information and belief, Salesforce copied the RedPajama and the Pile datasets containing Books3 to develop the xGen-Sales and xGen-Small models and incorporate the datasets into the models' training dataset.

65.  Plaintiffs and the Class members never authorized Defendant to make copies of their Infringed Works, make derivative works, publicly display copies (or derivative works), or distribute copies (or derivative works). All those rights belong exclusively to Plaintiffs and the Class members under the U.S. Copyright Act.

66.  By copying, storing, processing, reproducing, and using the datasets containing copies of Plaintiffs' Works, Defendant has directly infringed Plaintiffs' exclusive rights in their copyrighted works.

67.  By copying, storing, processing, and reproducing the XGen models trained on Plaintiffs'

Works, Salesforce has directly infringed Plaintiffs' exclusive rights in their copyrighted works.

68. Defendant repeatedly copied, stored, and used the Infringed Works without Plaintiffs' permission. Defendant made these copies without Plaintiffs' permission and in violation of their exclusive rights under the Copyright Act.

69. Defendant's infringing conduct alleged herein was and continues to be willful and carried out with full knowledge of Plaintiffs' rights in the copyrighted works. As a direct result of their conduct, Defendant has wrongfully profited from copyrighted works that they do not own.

70. By and through the actions alleged above, Defendant has infringed and will continue to infringe Plaintiffs' copyrights.

71. Plaintiffs have been injured by Defendant's acts of direct copyright infringement. Plaintiffs are entitled to statutory damages, actual damages, restitution of profits, and all appropriate legal and equitable relief.

## DEMAND FOR JUDGMENT

Wherefore, Plaintiffs request that the Court enter judgment on their behalf and on behalf of the Class defined herein, by ordering:

a) This action may proceed as a class action, with Plaintiffs serving as Class Representatives, and with Plaintiffs' counsel as Class Counsel.

b) Judgment in favor of Plaintiffs and the Class and against Defendant.

c) An award of statutory and other damages under 17 U.S.C. § 504 for violations of the copyrights of Plaintiffs and the Class by Defendant.

d) Reasonable attorneys' fees and reimbursement of costs under 17 U.S.C. § 505 or otherwise.

e) A declaration that such infringement is willful.

f) Destruction or other reasonable disposition of all copies Defendant made or used in violation of the exclusive rights of Plaintiffs and the Class, under 17 U.S.C. § 503(b).

g) Pre- and post-judgment interest on the damages awarded to Plaintiffs and the Class, and that such interest be awarded at the highest legal rate from and after the date this class action complaint is first served on Defendant.

h) Defendant is responsible financially for the costs and expenses of a Court-approved notice

program through post and media designed to give immediate notification to the Class.

i)   Further relief for Plaintiffs and the Class as may be appropriate.

### JURY TRIAL DEMANDED

Under Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all the claims asserted in this Complaint so triable.

Dated: October 15, 2025

By:   /s/ Joseph R. Saveri

Joseph R. Saveri (SBN 130064)
Christopher K.L. Young (SBN 318371)
William W. Castillo Guardado (SBN 294159)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:   jsaveri@saverilawfirm.com
         cyoung@saverilawfirm.com
         wcastillo@saverilawfirm.com

*Attorneys for Individual and Representative Plaintiffs E. Molly Tanzer and Jennifer Gilmore*