Joseph R. Saveri (SBN 130064)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, CA 94104
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com

Lesley E. Weaver (SBN 191305)
**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 300
Oakland, CA 94607
Tel. (341) 217-0550
Email: lweaver@stranchlaw.com

Karin B. Swope (*pro hac vice*)
**COTCHETT, PITRE & MCCARTHY, LLP**
1809 7th Ave., Ste. 1610
Seattle, WA 98101
Tel: (206) 802-1272
Fax: (206) 299-4184
Email:  kswope@cpmlegal.com

*Attorneys for Individual and Representative
Plaintiffs E. Molly Tanzer, Jennifer Gilmore,
Tasha Alexander, Jon McGoran, and Art Kleiner
[Additional counsel on signature block below]*

JOSEPH C. GRATZ (CA SBN 240676)
JGratz@mofo.com
TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, California 94105-2482
Telephone:    415.268.7000
Facsimile:    415.268.7522

CHRISTIAN W. MARCELO (WA Bar No.
51193) (*pro hac vice*)
CMarcelo@mofo.com
MORRISON & FOERSTER LLP
925 Fourth Avenue, Floor 38
Seattle, WA 98104
Telephone:    206.327.6500

SARA TALEBIAN, (DC Bar No. 1779112)
(*pro hac vice*)
STalebian@mofo.com
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, D.C.  20037
Telephone:    202.887.1500

*Attorneys for Defendant
SALESFORCE, INC.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| *In re Salesforce LLM Copyright Infringement Litigation* | Master File No. 3:25-cv-08862-CRB <br><br> **JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT** : ORDER <br><br> Hearing Date: March 20, 2026 <br> Time: 8:30 AM <br> Place: Videoconference <br> Judge: Hon. Charles R. Breyer |

Pursuant to Federal Rule of Civil Procedure 26(f)(2), Civil Local Rule 16-9, and the Court's Case Management Order (ECF No. 17), counsel for Plaintiffs E. Molly Tanzer, Jennifer Gilmore, Tasha Alexander, Jon McGoran, and Art Kleiner ("Plaintiffs"), and Defendant Salesforce, Inc. ("Salesforce") (collectively, the "Parties") have met and conferred and respectfully submit this Joint Case Management Statement and Rule 26(f) Report in advance of the Initial Case Management Conference on March 20, 2026. The Parties held the Rule 26(f) conference on January 29, 2026 and conferred concerning the topics set forth in Rule 26(f), the Northern District of California Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information and Guidelines for the Discovery of Electronically Stored Information, and the Standing Order for All Judges of the Northern District of California—Contents of Joint Case Management Statement (updated Nov. 30, 2023).

## 1.    JURISDICTION AND SERVICE

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action alleges violations of the Copyright Act (17 U.S.C. § 501). Jurisdiction and venue are proper under 28 U.S.C. § 1391(c)(2) because Salesforce is headquartered in this district. All Parties have been served.

## 2.    FACTS

**Plaintiffs' Statement**

The First Amended Consolidated Complaint ("FACC") alleges one count of direct copyright infringement against Salesforce. Plaintiffs and Class members are authors with registered copyrights in books that are included in two notorious pirated datasets—Books3 and RedPajama-Books—comprising over 196,000 books pulled from the illegal "shadow library" Bibliotik. Plaintiffs allege that Salesforce acquired, ingested, copied, stored, and used Books3 and RedPajama-Books to develop many of Salesforce's large language models ("LLMs"), including its Codegen and XGen series of LLMs. Salesforce made multiple copies of these copyrighted works without the authorization and consent of their authors, and without compensating them. Salesforce's brazen theft of hundreds of thousands of books harmed the

market for Plaintiffs' works, and precluded Plaintiffs from benefiting from the rapidly developing market for artificial intelligence training data. During the development of its LLMs, Salesforce copied protected expression contained in Plaintiffs' works. LLMs like those created by Salesforce are capable of generating output that contains that protected expression, further harming Plaintiffs by creating additional unauthorized copies of Plaintiffs' works.

**Defendant's Statement**

Salesforce disputes Plaintiffs' allegations and claim. Salesforce asserts several arguments and/or defenses, including but not limited to, no infringement, fair use, substantial non-infringing uses, *scenes à faire*, *de minimis* copying, and lack of injury.

3.    **LEGAL ISSUES**

**Plaintiffs' Statement**

The legal issue at the core of this matter is whether Salesforce's unlawful downloading, storage, copying, and use of Plaintiffs' works violated Plaintiffs' and Class members' rights to reproduction and distribution under the Copyright Act, 17 U.S.C. §§ 501, *et seq*.

Defendant has stated that it will rely on a fair use affirmative defense. ECF No. 31 at 12. But there is no question that Salesforce downloaded Plaintiffs' books from pirated sources for commercial gain, without authorization or compensation. That, alone, is copyright infringement and manifestly an unfair use. *See, e.g.*, *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001) (affirming no fair use for downloading works); *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1026 (N.D. Cal. 2025) ("Pirating copies to build a research library without paying for it, and to retain copies should they prove useful for one thing or another, was its own use—and not a transformative one."). Further, the sheer volume of Defendant's infringement counsels against a finding of fair use. *See Harper & Row v. Nation Enterprises*, 471 U.S. 539, 569 (1985) ("'Isolated instances of minor infringements, when multiplied many times, become in the aggregate a major inroad on copyright that must be prevented.'") (quoting S. Rep. No. 473 at 65 (1975)). Plaintiffs will also show that Salesforce's use of Plaintiffs' works is non-transformative, precisely because it exploits what the Copyright Act protects: protected expression, which Salesforce utilizes to calibrate its LLMs to mimic the expression

found in books. *See, e.g.*, *Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.*, 765 F. Supp. 3d 382, 398–400 (D. Del. 2025) (not fair use to copy text when AI company meant to generate "market substitute"); *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 525, 528 (2023) (question of "transformativeness" under first fair use factor is whether challenged use serves purpose similar to that of the original work, regardless of whether secondary work adds new expression or meaning). In addition, Plaintiffs will demonstrate that Defendant's downloading, storing, and use of Plaintiffs' works to train their LLMs affects the market for those very works (fair use Factor Four). This is because the fair use defense cannot countenance using copyrighted books to develop a tool that enables the creation of a potentially endless stream of competing works that will significantly harm the market for these books. *See Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1052 (N.D. Cal. 2025).

In addition, Plaintiffs further believe that there are numerous questions of law and fact common to the putative class, and those issues predominate over any question affecting only individual class members. *See* Part 9, *infra*. Given the numerous common legal and factual issues, Plaintiffs do not believe that phased discovery is necessary or appropriate to this case.

**Defendant's Statement**

The central legal issue is whether Salesforce's development and training of certain large language models violate Plaintiffs' copyrights in their asserted works. Salesforce has not infringed upon Plaintiffs' asserted works, including because Salesforce's use of Plaintiffs' works, if any, is a fair use under 17 U.S.C. § 107. In addition to fair use, Plaintiffs must establish ownership, valid registration under 17 U.S.C. § 411, actionable copying, and damages.

Salesforce anticipates filing dispositive motions, including a motion for summary judgment addressing Plaintiffs' claim and Salesforce's fair use defense.  As discussed in more detail below in Section 15 on Scheduling, because resolution of dispositive issues may substantially narrow or resolve the case, Salesforce believes summary judgment should be adjudicated prior to any motion for class certification.  This ordering has also been adopted in other putative class actions involving alleged use of books for AI training.

1      Last, Plaintiffs seek certification of a putative class.  Salesforce contends that Rule 23

2  cannot be satisfied because individualized issues predominate, including whether particular

3  works were included in any training data, whether any copying was actionable, whether any

4  output is substantially similar to any specific work, whether any market harm occurred, and

5  how damages would be calculated.

6  **4.    MOTIONS**

7      There are no pending motions at this time.

8      Plaintiffs anticipate moving for class certification on or before December 3, 2027,

9  consistent with the proposed case schedule. *See* Part 15(b), *infra*. Plaintiffs may file other

10  motions as appropriate.

11      Salesforce anticipates filing dispositive motions, including a motion for summary

12  judgment, and an opposition to class certification, as well as related motions as appropriate. In

13  addition, Salesforce anticipates that the Parties may file motions concerning expert testimony

14  pursuant to Federal Rule of Evidence 702 and discovery motions.

15  **5.    AMENDMENT OF PLEADINGS**

16      Except for amendments permitted by Fed. R. Civ. P. 15(a)(1) and this Court's

17  Individual Rules & Practices ("Individual Rules"), amended pleadings may not be filed and

18  additional parties may not be joined except with leave of the Court.

19      The Parties do not anticipate any substantive amendments to the pleadings at this time.

20  **6.    EVIDENCE PRESERVATION**

21      The Parties have reviewed this Court's Guidelines Relating to the Discovery of

22  Electronically Stored Information. The Parties met and conferred pursuant to Rule 26(f) on

23  January 29, 2026, regarding preservation of evidence relevant to the issues evident in the case.

24  In addition, Plaintiffs served a formal preservation letter upon Defendant on February 6, 2026,

25  and Defendant's counsel confirmed receipt of the letter on February 27, 2026. The Parties are

26  aware of their obligations and have taken reasonable steps to preserve potentially relevant

27  evidence.

28

**7.    <u>DISCLOSURES</u>**

Plaintiffs and Defendant served their Federal Rule of Civil Procedure 26(a) initial disclosures on February 17, 2026. The Parties will supplement initial disclosures as necessary, consistent with Rule 26(e).

**8.    <u>DISCOVERY</u>**

### a.  Discovery to Date

The Parties met and conferred pursuant to Rule 26(f) on January 29, 2026. Plaintiffs served their First Set of Requests for Production on January 31, 2026, and Salesforce's deadline to respond to these Requests is March 16, 2026. On February 3, 2026, Defendant served its First Set of Requests for Production, and Plaintiffs' deadline to respond to these Requests is March 19, 2026.

### b.  Scope of Discovery

The Parties agree that discovery is governed by the Federal Rules of Civil Procedure. The Parties will meet and confer on any discovery disputes that may arise in an effort to resolve them without court intervention. The Parties have agreed to electronic service.

**Plaintiffs' Statement**

Plaintiffs have sought or plan to seek discovery on the following, non-exhaustive list of subjects. Plaintiffs reserve all rights to expand upon these subject areas as the case proceeds:

- Identification of and details regarding all datasets that contain pirated data acquired by the Defendant, including Books3, RedPajama-Books, and any sub-versions or iterations, and records and communications pertaining thereto.

- Identification of and details regarding all datasets containing copyrighted works acquired by Salesforce or made available by Salesforce to third parties for the purpose of AI Model training or used to develop, pre-train, train, test, fine-tune, or modify any AI, machine learning, or deep learning model.

- Identification of and details regarding all agreements, licenses, partnerships, or collaborations relating to the acquisition and/or use of training data or pirated

data containing copyrighted works or that Defendant claims bear on this action, including, but not limited to class certification, as well as payments made by Defendant pursuant to such agreements.

- Whether Defendant knowingly violated the copyrights of Plaintiffs and the Class when they downloaded copies of the Works.

- Whether Defendant knowingly violated the copyrights of Plaintiffs and the Class when it used copies of the Works to train Defendant's Language Models.

- Defendant's unauthorized use of Plaintiffs' and the Class's works in connection with Defendant's Language Models.

- Facts related to affirmative defenses raised by Defendant including, but not limited to, whether some or all of Defendant's conduct is allowed under the fair use doctrine.

- Any interactions between Class members (including Plaintiffs) and Defendant.

**Defendant's Statement**

Salesforce has sought or plans to seek discovery on the following, non-exhaustive list of subjects. Salesforce reserves all rights to expand upon these subject areas as the case proceeds:

- Plaintiffs' lack of harm.

- Plaintiffs' ownership of and copyright interest in the asserted works in this action.

- Plaintiffs' works, and where and how they are published.

- Plaintiffs' lack of prospective economic relations with third parties.

- The licensing and distribution of all Plaintiffs' works they assert form any basis for their claim, and all other facts concerning the market for such works.

- Any copyright registrations or applications for registration of any of the Plaintiffs' works.

- The presence of Plaintiffs' asserted works in Books3 or any other dataset Plaintiffs' contend is relevant.

- Salesforce will also seek discovery relevant to Rule 23, including issues bearing on commonality, predominance, and damages, including whether such issues can be established through common proof.

### c. Completion of Discovery

The Court has not yet set a deadline for the close of fact discovery. Plaintiffs propose that fact discovery should be completed by July 23, 2027. Salesforce proposes that fact discovery should be completed by March 26, 2027.

### d. Discovery Limitations

The Parties have met and conferred with respect to the discovery limits set forth in in the Federal Rules.

**Plaintiffs' Statement**

Given the nature of the legal and factual issues in this case, Plaintiffs believe that expansion of the discovery limits set forth in the Federal Rules of Civil Procedure will be necessary in this case. Plaintiffs have conferred with Defendant regarding the likelihood they will require expansion of the number of depositions and interrogatories set out in Rules 30 and 33 of the Federal Rules of Civil Procedure. Because discovery has only recently commenced and no documents have been produced yet, Plaintiffs are not yet in a position to determine the number of depositions and interrogatories needed at this juncture, but reserve the right to do so.

**Defendant's Statement**

Salesforce does not agree that expansion of the presumptive discovery limits set forth in the Federal Rules of Civil Procedure is warranted at this time. The Federal Rules provide substantial discovery tools, including up to ten depositions and twenty-five interrogatories per side, which are sufficient to address the needs of this case. Discovery has only recently commenced, and the parties have yet to produce documents, respond to written discovery requests, take a deposition, or serve a number of interrogatories approaching the presumptive limits. Accordingly, any request to expand those limits is premature. Salesforce is willing to meet and confer in good faith should Plaintiffs later contend that additional discovery is

necessary and can demonstrate that such expansion is proportional to the needs of the case under Rule 26(b)(1).

### e. Preservation and Production of Electronically Stored Information

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"). The Parties have met and conferred seven times regarding an Electronically Stored Information ("ESI") protocol, on February 5, 12, 17, 20, March 2, 6, and 12, 2026. The parties have reached impasse on disputes regarding the identification of ESI custodians, search terms hit reports, and the production of hyperlinked files that are linked in responsive documents, and may have disputes over search term process, Technology Assisted Review, and review validation. The parties respectfully seek the Court's guidance for resolving these disputes.

### f. Protective Order

On March 5, 2026, the Court granted the Parties' stipulated Protective Order. ECF No. 38. On March 12, 2026, the Parties submitted a stipulated proposed protective order covering the inspection of source code material. ECF No. 40. The Court granted the Parties' stipulated protective order covering the inspection of source code material on March 13, 2026.

### g. Privilege

The Parties have met and conferred regarding a protocol for privilege issues, including privilege logging, which will be incorporated into the joint stipulated ESI protocol. And the Protective Order memorializes the agreed upon procedure for the treatment of inadvertently produced discovery materials under Fed. R. Evid. 502(d). ECF No. 38 at 15–16.

### h. Deposition Logistics

The Parties will meet and confer in good faith on a deposition-by-deposition basis to determine the appropriateness and feasibility regarding in-person and remote depositions. The Parties expect that any in-person depositions will be conducted in the Northern District of California or elsewhere in the United States. The Parties are unaware of depositions to be taken outside the United States at this time. The Parties agree to meet and confer should any disputes arise as to location of depositions and/or use of remote depositions.

The Parties agree that a deposition protocol is appropriate to set mutually agreed upon guidelines for depositions in this case.

### i. Discovery Issues and Potential Disputes

The Parties have commenced discovery. As noted above, the Parties have reached impasse regarding some disputes regarding the ESI Protocol, and seek the Court's guidance regarding resolution of these disputes.

### j. Narrowing of Issues

No issues have yet been narrowed by agreement or motion. The Parties are prepared to meet and confer about narrowing potential issues should the circumstances of the case change.

## 9.    CLASS ACTION

This case is a putative class action. Counsel for both sides have reviewed the Procedural Guidance for Class Action Settlements.

**Plaintiffs' Statement:** Plaintiffs believe that the class is so numerous that joinder of all members is impracticable. Plaintiffs do not know the exact size of the class since that information is within the exclusive control of Defendant. Upon information and belief, Plaintiffs believe and allege that the number of class members is in the hundreds of thousands. Plaintiffs, like all class members, allege that Salesforce downloaded, copied, stored, or otherwise used their copyright-protected works, including during the development of Salesforce's XGen and CodeGen models. Plaintiffs allege that all members of the class have been similarly injured by Defendant's conduct. Plaintiffs believe there are numerous questions of law or fact common to the class, and those issues predominate over any question affecting only individual class members. These common legal and factual issues include the following:

- Whether Defendant violated the copyrights of Plaintiffs and the class when they downloaded copies of Plaintiffs' copyrighted works.

- Whether Defendant violated the copyrights of Plaintiffs and the class when they made copies of Plaintiffs' copyrighted works to develop Defendant's LLMs.

- Whether this Court should enjoin Defendant from engaging in the unlawful conduct alleged herein, and the appropriate scope of that injunction.

- Whether any affirmative defense (including fair use) excuses Defendant's conduct.

- The amount of damages.

Plaintiffs do not believe that phased discovery is necessary or appropriate in this case.

**Defendant's Statement:**

Salesforce denies that this case is appropriate for class treatment under Federal Rule of Civil Procedure 23. Plaintiffs' allegations improperly assume that all putative class members are similarly situated and similarly injured, but any determination of liability or damages would necessarily require individualized inquiries, including as to ownership, registration status, scope of rights, the presence (if any) of a particular work in any training dataset, whether any protected expression was allegedly copied, and the applicability of affirmative defenses such as fair use. These individualized issues defeat commonality, typicality, and predominance. Salesforce further disputes Plaintiffs' unsupported assertion that the putative class numbers in the "hundreds of thousands," and denies that the size of any certifiable class, if one exists at all, is within Salesforce's exclusive control. Plaintiffs bear the burden of establishing each element of Rule 23 through competent evidence.

As stated above, Salesforce believes that class certification should not be addressed until after the resolution of summary judgment motions. Salesforce anticipates moving for summary judgment on threshold legal issues, including fair use and other defenses, that may substantially narrow or eliminate Plaintiffs' claim. Resolution of those issues will necessarily inform, and may moot, many class certification questions. Accordingly, Defendant's position is that summary judgment should be briefed and decided before any motion for class certification.

## 10.    **RELATED CASES**

Pursuant to the Court's November 18, 2025 Order (ECF No. 13), the later-filed case *Alexander v. Salesforce, Inc.*, No. 5:25-cv-09560-VKD (N.D. Cal.) was related to the first-filed case, *Tanzer, et al. v. Salesforce, Inc.*, No. 3:25-cv-08862-CRB (N.D. Cal.). On December 31, 2025, the Court ordered (ECF No. 17) that the two cases be consolidated pursuant to Rule

6-1(b) of the Local Rules of the United States District Court, Northern District of California and Rule 42(a) of the Federal Rules of Civil Procedure. On February 9, 2026, the Court entered Pretrial Order No. 1 (ECF No. 30), requiring that in any cases filed in, removed to, or transferred to this jurisdiction and involving the same or substantially similar issues of law and fact, the Parties in such cases file a notice of related case.

At this time, the Parties are unaware of any other cases brought on behalf of authors with registered copyrights involving Defendant's large language models other than the instant case, and the cases that were consolidated into this case.

**11.   RELIEF**

**Plaintiffs' Position**

Plaintiffs may seek either actual or statutory damages under 17 U.S.C. § 504 for Defendant's violations of the copyrights of Plaintiffs and the class, including an award of reasonable attorneys' fees under 17 U.S.C. § 505 or other applicable statutes. Plaintiffs further seek destruction or other reasonable disposition of all copies Defendant made or used in violation of the exclusive rights of Plaintiffs and the class, pursuant to 17 U.S.C. § 503(b). Plaintiffs may additionally seek other injunctive and/or declaratory relief, which may consist of an order declaring Defendant's conduct unlawful and/or requiring Defendant to immediately cease and desist from such unlawful conduct. Plaintiffs seek pre- and post-judgment interest on damages awarded to Plaintiffs and the class, at the highest legal rate from and after October 20, 2025 (the date that the Complaint in the first-filed *Tanzer* action was served on Defendant).

A complete computation of damages may only be made after a review of Defendant's and any third parties' records and data, as well as analysis by Plaintiffs' expert(s). Plaintiffs will provide a more definitive statement of damages at the appropriate time as set forth by the Court in the schedule for the case and in conformance with Rule 26(e), after review of Defendant's and any third parties' data and records and following the production of Plaintiffs' experts' damage report(s).

**Defendant's Position:**

Salesforce denies that Plaintiffs are entitled to any relief whatsoever. Salesforce denies

that it violated Plaintiffs' copyrights, denies that Plaintiffs or any putative class member suffered any cognizable injury or damages, and denies that any alleged conduct gives rise to liability. Salesforce further denies that Plaintiffs are entitled to actual damages, statutory damages, disgorgement of profits, attorneys' fees, injunctive or declaratory relief, destruction or other disposition of materials, or pre- or post-judgment interest. Salesforce disputes the availability and scope of statutory damages and attorneys' fees under 17 U.S.C. §§ 412, 504, and 505, disputes that any basis exists for injunctive or destruction remedies, and reserves all defenses as to liability, causation, willfulness, and damages.

Salesforce does not seek any relief other than attorneys' fees and costs if it prevails.

**12.    SETTLEMENT AND ADR**

Plaintiffs filed their ADR Certification pursuant to ADR Local R. 3-5(b) on March 13, 2026. ECF No. 42. Salesforce filed its ADR Certifications pursuant to ADR Local R. 3-5(b) on March 13. ECF No. 43.

Pursuant to ADR Local Rule 3-5 and Civil Local Rule 16-8, on March 12, 2026, the parties met and conferred regarding the available ADR options. The parties agree to proceed with private mediation to commence at or around close of fact discovery, and intend to continue to meet and confer on a mediation plan.

**13.    OTHER REFERENCES**

The Parties agree that this case is not suitable for binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation at this time.

The Parties do not oppose having discovery disputes heard by a magistrate judge if the Court is inclined to appoint a discovery magistrate.

**14.    NARROWING OF ISSUES**

No issues have yet been narrowed by agreement or by motion.

**15.    SCHEDULING**

**a. Expedited Trial Procedures**

The Parties agree that this Action is not appropriate for the Expedited Trial Procedure of General Order 64.

### b. Case Schedule

**Plaintiffs' Position:** Plaintiffs propose the following schedule.

| Event | Plaintiffs' Proposed Date |
|---|---|
| Producing party identifies a reasonable number of custodians | March 27, 2026 |
| Requesting party identifies a reasonable number of additional custodians | April 3, 2026 |
| Substantial completion of productions | November 7, 2026 |
| Close of Fact Discovery | July 23, 2027 |
| Opening Expert Report(s) (on issues for which a party bears the burden of proof) | August 27, 2027 |
| Rebuttal Expert Report(s) (on issues for which a party does not bear the burden of proof) | October 1, 2027 |
| Expert Reply Report(s) | November 5, 2027 |
| Close of Expert Discovery | November 19, 2027 |
| Class Certification Motion | December 3, 2027 |
| Defendant's *Daubert* Motions regarding Plaintiffs' Expert(s) | December 10, 2027 |
| Summary Judgment Motions | December 14, 2027 |
| Opposition to Class Certification Motion | January 14, 2028 |
| Oppositions to Summary Judgment Motions | January 28, 2028 |
| Opposition to Defendant's *Daubert* Motions | February 11, 2028 |
| Plaintiffs' *Daubert* Motions on Defendants' Expert(s) | February 25, 2028 |
| Reply in Support of Class Certification Motion | March 10, 2028 |
| Defendant's Opposition to Plaintiffs' *Daubert* Motions | March 10, 2028 |
| Replies in Support of Summary Judgment | March 24, 2028 |
| Hearing on Class Certification & Rule 56 Motions | *At the Court's convenience* |
| Pretrial Conference | ~~June 2, 2028~~   TBD |
| Trial Ready Date | ~~June 23, 2028~~   TBD |

Plaintiffs' proposed schedule contemplates briefing summary judgement and class certification motions near-simultaneously to ensure a speedy resolution to this case. The exchange of near-simultaneous motions on merits and class certification is "acceptable" in the Ninth Circuit. *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1032 (9th Cir. 2012). This schedule will encourage the fulsome disclosure of information during the discovery period and streamline resources—for example, it will create efficiencies regarding expert depositions and

expert reports.

By contrast, Defendant's proposal—which contemplates summary judgement to occur before a class is certified—would risk multiplying proceedings and create needless inefficiencies. If Defendant is permitted to move for summary judgment before class certification is determined, Defendant would "assume[] the risk that a judgment in [its] favor will not protect [it] from subsequent suits by other potential class members." *Schwarzschild v. Tse*, 69 F.3d 293, 297 (9th Cir. 1995) (citation omitted); *Rivera v. Ryder Integrated Logistics, Inc.*, 2022 WL 18337695, at *5 (C.D. Cal. Dec. 27, 2022) (where "[d]efendants ask for a ruling on their motion, knowing that class certification may occur later . . . [they] have accepted that the ruling would only apply to [p]laintiff, the named plaintiff."). Since Defendant agrees to waive one-way intervention, this rule may prevent the Court from ruling on Plaintiffs' motion. *See Villa v. S.F. Forty-Niners, Ltd.*, 104 F. Supp. 3d 1017, 1021 (N.D. Cal. 2015) (denying plaintiff's motion for summary judgement as procedurally improper under the under "one-way intervention" rule). Such an outcome is unfair to Plaintiffs and creates the risk of substantial additional burdens on the Court. For this reason, "[c]ourts generally do not grant summary judgment on the merits of a class action until the class has been properly certified and notified." *Mayhall on behalf of D.M. v. Amazon Web Servs. Inc.*, 2023 WL 6382417, at *4 (W.D. Wash. Sept. 29, 2023); *see also McCurley v. Royal Seas Cruises, Inc.*, No. 17-CV-00986-BAS-AGS, 2019 WL 3817970, at *4 (S.D. Cal. Aug. 14, 2019) ("Ultimately, class notice should be completed before dispositive motions are decided.").

In *Kadrey et al. v. Meta Platforms, Inc.*, upon which Defendant relies, Defendant waived one-way intervention thus eliminating the fairness concerns. Case No. 3:23-cv-03417 (N.D. Cal. Jan. 12, 2024), Dkt. No. 85 at 5:18-19.[1] Defendant notably has not made that

---

[1]   *Accord* Standing Order for Civil Cases Before Judge Chhabria at ¶ 52, https://cand.uscourts.gov/sites/default/files/standing-orders/VC-Civil-Standing-Order-2025-06-27.pdf (noting that a schedule allowing for cross-motions for summary judgement before class certification "requires the defendant's consent, since a grant of summary judgment in the named plaintiff's favor could end up giving unnamed class members a chance to opt in to a lawsuit where a legal issue has already been decided against the defendant.").

representation here. Further, before the copyright action *Tremblay v. OpenAI, Inc.*, was transferred to the Southern District of New York for coordination with the MDL proceeding, Judge Araceli Martínez-Olguín for the Northern District of California declined to sequence summary judgment before class certification. Case No. 23-cv-04625-AMO (N.D. Cal. Nov. 28, 2023), ECF No. 29 at 13. Other scheduling orders for copyright class actions involving AI models in this district have scheduled class certification briefing before or at the same time as summary judgment briefing. *See*, *e.g., Nazemian, et al., v. Nvidia Corp.,* Case No. 4:24-cv-14554 (JST) (N.D. Cal. Oct. 15, 2025), ECF No. 188 (scheduling motion for class certification prior to motions for summary judgment); *Bartz, et al. v. Anthropic PBC*, Case No. 3:24-cv-05417 (WHA) (N.D. Cal. Feb. 25, 2025), ECF No. 95 (minute order) (ordering simultaneous filing of motion for class certification and summary judgment); *Anderson, et al. v. Stability AI Ltd*., et al., 3:23-cv-00201 (WHO) (N.D. Cal. Feb. 26, 2026), ECF No. 409 (same).

Because allowing near-simultaneous briefing on summary judgment and class certification will create efficiencies and minimize the risk of multiple proceedings, Plaintiffs respectfully request that the Court adopt Plaintiffs' proposed schedule.

**Defendant's Position:** Salesforce proposes the following schedule.

| **Event** | **Salesforce's Proposed Date** |
|---|---|
| Process of the producing party's identification of 4 custodians and requesting party's identification of 4 additional custodians | Must begin no later than 14 days from entry of the ESI Stipulation, and conclude within twenty-one days from entry of the ESI Stipulation. |
| Substantial completion of productions | November 7, 2026 |
| Close of Fact Discovery | March 26, 2027 |
| Opening Merits Expert Report(s) (on issues for which a party bears the burden of proof) | April 30, 2027 |
| Rebuttal Merits Expert Report(s) (on issues for which a party does not bear the burden of proof) | June 4, 2027 |
| Reply Merits Expert Report(s) | July 7, 2027 |
| Close of Merits Expert Discovery | July 23, 2027 |
| Summary Judgment Motions | August 20, 2027 |
| *Daubert* Motions | August 27, 2027 |
| Oppositions to Summary Judgment Motions | September 24, 2027 |

| Event | Salesforce's Proposed Date |
|---|---|
| Opposition to *Daubert* Motions Due | October 1, 2027 |
| Replies in Support of Summary Judgment | October 15, 2027 |
| Hearing on Summary Judgment | *At the Court's convenience* |
| Class Certification Motion | (If necessary) 60 days after Court's ruling on Summary Judgment |

As an initial matter, the foregoing expert discovery schedule should govern merits expert discovery, which should be completed prior to summary judgment briefing. The expert discovery schedule regarding class certification should coincide with class certification briefing, which Salesforce proposes occurs after summary judgment is decided.

Further, to the extent the scope of Plaintiffs' infringement claim is not clear at the close of fact discovery, Salesforce reserves its right to and anticipates requesting a modification to the above expert report briefing schedule to address this issue.

Finally, class certification should be addressed after resolution of motions for summary judgment regarding the fair use defense. Salesforce is aware of the implications of sequencing summary judgment before class certification and waives the one-way intervention rule should the Court adopt Salesforce's proposed schedule and summary judgment is decided prior to class certification.

In a putative class action involving a fair use defense, Judge Chhabria took a similar approach in scheduling summary judgment on fair use prior to class certification. *Kadrey et al. v. Meta Platforms, Inc.*, Case No. 3:23-cv-03417 (N.D. Cal. Jan. 12, 2024), Dkt. No. 85 (transcript of Jan. 12, 2024 proceedings) (ordering summary judgment before class certification in a generative AI copyright class action on behalf of the same putative class of authors). Likewise, the Second Circuit vacated a decision on class certification and remanded for consideration after fair-use summary judgment motions, because "resolution of [the] fair use defense in the first instance will necessarily inform and perhaps moot our analysis of many class certification issues, including those regarding the commonality of plaintiffs' injuries, the

typicality of their claims, and the predominance of common questions of law or fact." *Authors Guild, Inc. v. Google Inc.*, 721 F.3d 132, 134–135 (2d Cir. 2013). This is also the same ordering put in place by Judge Stein in a co-pending MDL in alleging uses of books by OpenAI. Case Management Order No. 2, *In re OpenAI, Inc. Copyright Infringement Litigation*, Case No. 25-md-3143 (SHS) (OTW), ECF 574 at 2 (S.D.N.Y. May 22, 2025).

The same is true here. It is only after determining what facts are potentially decisive in the fair-use analysis—which will be a disputed issue in summary-judgment briefing—that the stage will be set to determine whether those are factual issues common to the class, or whether they present individualized issues. Fair use cases are unusual in this regard.

As Plaintiffs acknowledge, sequencing summary judgment before class certification means that a summary judgment order binds only the Named Plaintiffs, leaving open the potential for subsequent suits by other potential class members.  That potential burden, however, is a risk that Salesforce carries, not Plaintiffs. As noted above, Salesforce is aware of the implications and will waive the one-way intervention rule.  As Judge Chhabria explained, it is common practice to "giv[e] Defendants the option to do it this way." *Kadrey*, Dkt. No. 85 at 10:23–11:4 (transcript of Jan. 12, 2024 proceedings addressing sequencing summary judgment before class certification).

Conducting simultaneous briefing on summary judgment and class certification, as Plaintiffs propose, negates one of the primary benefits afforded by sequencing summary judgment before class certification. Namely that summary judgment in this case, and specifically Salesforce's fair use defense, would resolve the merits of the case in full, obviating the need for class certification. On the other hand, sequencing as Salesforce proposes presents no additional risk or burden to Plaintiffs, while promoting efficiency. The sole concern Plaintiffs raise is resolved by Salesforce's waiver of the one-way intervention rule, and Plaintiffs likewise offer no reasoning from the cases they rely on that applies here as to why class certification should precede or coincide with summary judgment.

Thus, Salesforce respectfully requests that the Court adopt Salesforce's proposed schedule.

**16.**   <u>**Trial**</u>

The case will be tried before a jury. Plaintiffs anticipate a 14-day trial. Salesforce believes determination of a trial schedule is premature at this time.

**17.**   <u>**Disclosure of Non-Party Interested Entities or Persons**</u>

Plaintiffs E. Molly Tanzer and Jennifer Gilmore filed a Certification of Interested Entities or Persons on November 20, 2025. ECF No. 14. Plaintiffs Tasha Alexander, Jon McGoran and Art Kleiner filed a Certification of Interested Entities or Persons on March 6, 2026. ECF No. 39.

Defendant Salesforce, Inc. filed its Corporate Disclosure Statement and Certification of Interested Entities or Persons on November 10, 2025. ECF No. 12. Salesforce confirms that its certification remains accurate and complete.

**18.**   <u>**Professional Conduct**</u>

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**19.**   <u>**Other Matters**</u>

The Parties are not presently aware of other matters that may facilitate the resolution of these cases.


Dated: March 13, 2026                                    By: *_/s/ Joseph R. Saveri_*

Joseph R. Saveri (SBN 130064)
Christopher K.L. Young (SBN 318371)
William W. Castillo Guardado (SBN 294159)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, CA 94104
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
        cyoung@saverilawfirm.com
        wcastillo@saverilawfirm.com

Avery M. Wolff (*pro hac vice*)
**SAVERI LAW FIRM, LLP**
780 Third Avenue, Suite 1200
New York, NY 10017
Telephone:  (347) 790-0069
Facsimile:   (347) 790-0029
Email:  awolff@saverilawfirm.com

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 300
Oakland, CA 94607
Tel. (341) 217-0550
Email: lweaver@stranchlaw.com
        adavis@stranchlaw.com
        jsamra@stranchlaw.com

Karin B. Swope (*pro hac vice*)
Thomas E. Loeser, (SBN 202724)
Andrew Fuller (*pro hac vice* to be filed)
Jacob M. Alhadeff (*pro hac vice* to be filed)
**COTCHETT, PITRE & MCCARTHY, LLP**
1809 7th Ave., Ste. 1610
Seattle, WA 98101
Tel: (206) 802-1272
Fax: (206) 299-4184
Email:  kswope@cpmlegal.com
        tloeser@cpmlegal.com
        afuller@cpmlegal.com
        jalhadeff@cpmlegal.com

Joseph I. Marchese (*pro hac vice* to be filed)
Julian C. Diamond (*pro hac vice* to be filed)
Caroline C. Donovan (*pro hac vice* to be filed)
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
Email:  jmarchese@bursor.com
        jdiamond@bursor.com
        cdonovan@bursor.com

Dated: March 13, 2026

By:    /s/ Christian W. Marcelo

JOSEPH C. GRATZ (CA SBN 240676)
JGratz@mofo.com
TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, California  94105-2482
Telephone:    415.268.7000
Facsimile:    415.268.7522

CHRISTIAN W. MARCELO, (WA Bar No. 51193)
(*pro hac vice*)
CMarcelo@mofo.com
MORRISON & FOERSTER LLP
925 Fourth Avenue, Floor 38
Seattle, WA 98104
TELEPHONE:    206.327.6500

SARA TALEBIAN, (DC Bar No. 1779112)
(*pro hac vice*)
STalebian@mofo.com
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, D.C.  20037
Telephone:    202.887.1500

*Attorneys for Defendant*
SALESFORCE, INC.

The Court adopts the Plaintiff's Proposed Schedule as outlined in the Case Management Statement. Case Management Conference set for March 20, 2026 is vacated.  Pretrial and Trial dates to be determined. The parties shall participate in Private Mediation. A Joint Case Management Statement due by November 13, 2026. Case Management Conference set for March 20, 2026 at 8:30 a.m. by video conference.

Date: March 16, 2026



IT IS SO ORDERED

Judge Charles R. Breyer