Joseph R. Saveri (SBN 130064)
Christopher K.L. Young (SBN 318371)
William W. Castillo Guardado (SBN 294159)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, CA 94104
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
        cyoung@saverilawfirm.com
        wcastillo@saverilawfirm.com

Karin B. Swope (*pro hac vice*)
Thomas E. Loeser (SBN 202724)
Andrew Fuller (*pro hac vice* to be filed)
Jacob M. Alhadeff (*pro hac vice* to be filed)
**COTCHETT, PITRE & MCCARTHY, LLP**
1809 7th Ave., Ste. 1610
Seattle, WA 98101
Tel: (206) 802-1272
Fax: (206) 299-4184
Email:  kswope@cpmlegal.com
        tloeser@cpmlegal.com
        afuller@cpmlegal.com
        jalhadeff@cpmlegal.com

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 300
Oakland, CA 94607
Tel. (341) 217-0550
Email: lweaver@stranchlaw.com
        adavis@stranchlaw.com
        jsamra@stranchlaw.com

*Attorneys for Individual and Representative Plaintiffs*
*E. Molly Tanzer, Jennifer Gilmore, Tasha Alexander,*
*Jon McGoran, and Art Kleiner*

*[Additional counsel on signature block below]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| *In re Salesforce LLM Copyright Infringement Litigation* | Master File Case No. 3:25-cv-08862-CRB <br><br> **ESI STIPULATION AND [PROPOSED] ORDER** <br><br> Judge:          Hon. Charles R. Breyer <br> Action Filed:  October 15, 2025 |

Upon the stipulation of the Parties, the Court ORDERS as follows:

**I.      GENERAL PROVISIONS**

1.      This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination of this action, as required by Federal Rule of Civil Procedure 1."

2.      This Order may be modified in the Court's discretion or by stipulation.

3.      The Parties are expected to comply with the District's E-Discovery Guidelines ("Guidelines") and are encouraged to employ the District's Model Stipulated Order Re: the Discovery of Electronically Stored Information and Checklist for Rule 26(f) Meet and Confer regarding Electronically Stored Information.

**II.     DEFINITIONS**

1.      "Electronically stored information" or "ESI," as used herein, has the same meaning as contemplated by the Federal Rules of Civil Procedure.

2.      "Documents" has the meaning contemplated in the Federal Rules of Civil Procedure.

3.      "Party" or "Parties" means any Party to this Action, including all of its officers, directors, employees, consultants, retained experts, and outside counsel of record (and their support staffs).

4.      "Producing Party" means the Party that may be producing Documents in response to a request by the Requesting Party.

5.      "Requesting Party" means the Party requesting the production of Documents.

**III.    CUSTODIANS**

**1.          Identifying Initial Custodians:** Per the Court's March 16, 2026 entry of Plaintiffs' Proposed Schedule, the Producing Party shall identify a reasonable number of custodians by March 27, 2026; thereafter, the Receiving Party shall identify a reasonable number of additional custodians by April 3, 2026.

ESI STIPULATION AND [~~PROPOSED~~] ORDER

**2.** **Additional Custodians:** If, after the identification of initial custodians pursuant to the procedure above, the other Party believes that additional Document Custodians should be added, then the Requesting Party shall advise the Producing Party in writing of the proposed additional Document Custodians and the basis for the request. If the Parties have not agreed whether to add the Document Custodian within ten (10) days of the Requesting Party's request, then the matter may be brought to the Court in accordance with the Court's procedures. Nothing in this paragraph waives any objection by a Producing Party that further investigation, discovery, or document production is needed before determining the necessity or lack thereof of additional Document Custodians.

## IV.    DATA SOURCES

1. The Producing Party will inform the Requesting Party about which data sources within the Producing Party's possession, custody, or control have been searched and/or collected from to identify potentially responsive or relevant documents or ESI. The Parties agree to meet and confer regarding the identification of any additional data sources with potentially responsive information, in compliance with this Court's ESI Guidelines.

2. If a document contains one or more search terms and part but not all of the document is responsive to any document request, the entire document will be produced and will not be redacted for relevance or responsiveness except by leave of court. For redacted documents, the Parties shall provide the full text for the portions of the ESI that are not redacted.

3. The Parties shall meet and confer if certain categories of ESI that are reasonably likely to contain responsive information are inaccessible or otherwise unnecessary under the circumstances, or if produced ESI is not reasonably usable.

## V.    DOCUMENT SEARCH PROTOCOL

1. The Parties agree that in responding to a Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery, and validation of the ESI search methodology.

ESI STIPULATION AND [~~PROPOSED~~] ORDER

2.      **Proposed Search Term:** If a Producing Party intends to use search terms to locate responsive documents, the Producing Party will provide a list of search terms within ten (10) days from the later of (a) service of the Producing Party's response to a request for production or (b) the entry of this ESI Stipulation and the identification of the Producing Party's Document Custodians under this ESI Stipulation. The Requesting Party will have ten (10) days thereafter to request additional terms or modifications of the terms. The parties will promptly confer regarding any disputes relating to the proposed search terms.

3.      **Hit Reports:** To the extent search terms are used to identify a targeted document set for review, the Producing Party will provide a search term hit report with the following information:

   i.    The number of documents with hits for the term;

   ii.   The number of unique documents, *i.e.*, documents which do not have hits for any other term, for that term; and

   iii.  The number of family members requiring review in connection with all documents and hits.

If the Producing Party disputes the use of a search term for a specific custodian due to burden, it will provide a hit report for that term and custodian to the Requesting Party. If the electronic searches produce an unreasonably large number of non-responsive or irrelevant results, the Parties shall meet and confer to discuss the application of further negative search restrictions.

4.      **Validation of Review Results:** The Producing Party shall validate the results of its review (whether manual, TAR, or AI-assisted) by performing a statistically valid sample (95% Confidence level and a Margin of Error of 5%, or a Margin of Error of 2.5% if the estimated richness is below 5%) of the documents categorized as non-responsive (the "Null Set") within the review platform. A process shall be deemed reasonable if the Null Set validation sample demonstrates a minimum of 85% recall and an elusion rate of less than 5%, provided that the missed responsive documents are not uniquely relevant or of a different subject matter than those produced. If the validation results fall outside these parameters, the Parties shall meet and confer

ESI STIPULATION AND [~~PROPOSED~~] ORDER

in good faith to determine if supplemental review or remedial measures are necessary under the relevance and proportionality standards of Fed. R. Civ. P. 26(b)(1).

5.    **TAR:** Nothing in this Order prevents the Parties from using technology assisted review ("TAR") and other techniques (*e.g.*, AI assisted review) insofar as their use improves the efficacy of discovery. The Parties may use technology-assisted review (TAR), including Continuous Active Learning (CAL), or AI-assisted review (*e.g.*, aiR). A Producing Party that elects to use such technology will disclose: (a) the name of the software or vendor; (b) a general description of the review methodology including how it will train the algorithm, such as using exemplars, keyword search strings, or some other method (including disclosure of use of generative AI); (c) a description of the categories or sources of the documents included or excluded from the TAR process (*e.g.*, custodial or non-custodial sources); (d) if the Producing Party intends to cull or otherwise limit such volume of documents subject to by additional means, such as by applying search terms; and (e) the quality control measures taken to ensure a reasonable production consistent with Fed. R. Civ. P. 26(b)(1). The Producing Party is not required to disclose its specific AI prompts, internal instructions, or individual human-coding decisions that constitute attorney work product.

6.    **SMS, Text, or Other Internet or Mobile Application Messages ("Messages"):** The Parties agree to disclose whether any Document Custodians' mobile devices contain unique sources of ESI. If a Party is producing SMS, internet-based messages or instant message conversations, *e.g.*, from Slack, Signal, Google Messages, or Microsoft Teams, the Parties shall meet and confer regarding a search methodology tailored to searching Messages, the inclusive collection of such data, the format of the production, metadata fields, and other issues unique to this type of data. Electronically stored information associated with enterprise messaging tools should be collected and reviewed with emails and other custodian/non-custodian data sources. Responsive, non-privileged messages should be produced in an aggregate format to preserve the integrity of the threads of communication reflected in the messages and indicate either in a unique metadata field or on the face of the document, the specific platform the documents are from. Such

threads shall be produced in a manner that includes all messages for at least a 24-hour period, with time stamps for each individual message, recipient, and sender information. The threads shall be produced including any transmitted attachments, emojis, embedded images, or other media files, but hyperlinks shall be treated in accordance with the Hyperlinked Files provision below.

7.    **Entire Document Families:** Entire Document families must be produced, even if only the parent email or an attachment to an email is responsive, excepting (1) junk files and non-user created content routinely excluded during processing (provided that such routine processing-generated exclusions are disclosed), and (2) documents withheld on the basis of privilege. Where a document is fully withheld from an otherwise produced family on the basis of privilege, the Producing Party shall produce a single-page TIFF slip sheet indicating that the document was withheld.

8.    **Targeted Collections:** A Producing Party may collect documents without using search terms or technology-assisted review, and instead do "targeted" collections from sources known or identified in interviews or other discussions with counsel as containing responsive materials, such as shared folders, workspaces, and/or messaging channels (*e.g.*, Slack Channels, internal wiki pages, etc.).

## VI.    PRIVILEGE LOG

1.    Where a document is withheld from production or in part by redaction on the basis of attorney client privilege or work product doctrine, the Producing Party will produce a privilege log in an active, sortable, searchable Excel file. A Producing Party will produce a separate privilege log for each production within 45 days after the production of documents for which a privilege is asserted. The Parties shall meet and confer about any reasonable requests for an extension.

2.    The privilege log shall set forth the privilege relied upon and specify separately for each document[1]:

---

[1] Attorneys shall be denoted on any privilege log by an asterisk (*e.g.*, Joe Johnson*).

a. For each entry, a specific numeric identifier sufficient to allow the Parties to identify the entry (*e.g.*, "1," "2," etc.);

b. The Date the document was prepared and, if different, the Date on which it was sent to or shared with persons other than its author(s);

c. The Author, Custodian, and Recipient(s) of the document;

d. For email communications, the From, To, CC, and BCC information;

e. The Email Subject Line, Document Title, or Document Filename (unless privileged);

f. The Bates or production number of each document;

g. The number of attachments (if any);

h. The Bates stamp range for the entire document family, including any attachments not withheld on the basis of attorney client privilege or work product doctrine;

i. An indication of whether the document is produced with redactions or withheld in full; and

j. A description of the privilege or production being asserted and identify the attorney(s) associated with the document, consistent with Fed. R. Civ. P. 26(b)(5).

3. **Post-Complaint Communications:** A Party need not include on its privilege log (i) communications to or from outside or in-house counsel, or experts retained for the purpose of this litigation exchanged after October 15, 2025, or (ii) work product of counsel and the Parties created after the commencement of this litigation and specifically related thereto, that the Producing Party asserts a claim of attorney-client privilege or attorney work product protection. No other document withheld on the basis of Privilege may be excluded from a log except as specifically agreed to by the Parties in writing.

4. **Email Chains:** If there is more than one branch of (*i.e.*, more than one unique group of recipients of) an email thread, each branch will be individually logged to the extent those

branches are responsive and contain privileged material; however, each individual email within the thread need not be logged if the recipients of the email chain are all identical or if a Party has elected to use threading for review and/or production of emails. A Party asserting privilege over a chain of emails may produce only a single redacted copy of such email chain to the extent some portions are only partially privileged, except that any unique branches of the email chain must also either be produced in redacted form or included on the metadata privilege log.

5.    **Listserv:** For any listserv included as a sender or recipient for any communications included on a privilege log, the Producing Party shall produce the list of individual members of that listserv as of the time of the production, and identify whether its membership ever included third parties, if such data is available through reasonable efforts.

## VII.    ESI METADATA FORMAT AND PROCESSING ISSUES

1.    **Metadata Fields:** Except as otherwise set forth in this ESI Protocol, ESI files shall be produced with at least each of the data fields set forth in Appendix A that are available and can reasonably be extracted from a document.

2.    **Email Threading:** Email thread analysis may be used to reduce the volume of emails reviewed and produced, provided that the produced emails include all responsive information from a thread, including attachments (regardless of their placement in the email thread) and header information. The Parties agree that when producing the most-inclusive email in a thread, the Parties need not also produce lesser-included emails in the thread unless such lesser-included emails contain their own attachments. The Parties agree to meet and confer in good faith to resolve any production concerns regarding recipients that are lower in the thread but that may not all be showing on the top metadata fields in the thread in a threaded recipients field.

3.    **Hidden Text:** ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

4.    **Hyperlinked Files:** The Parties shall undertake reasonable efforts to collect and produce any such responsive and non-privileged hyperlinked files that are links in responsive

ESI STIPULATION AND [~~PROPOSED~~] ORDER

documents and emails located in the Producing Party's server, if the process can be automated using the Producing Party's normal document collection process and tools. The Producing Party will also use reasonable efforts to cross-reference produced responsive hyperlinked document(s) identified in a parent email with the email if such collection and production can be automated using the Producing Party's normal document collection process and tools. If the Producing Party cannot automate this process using the Producing Party's normal document collection process and tools or if the Receiving Party identifies additional documents containing hyperlinks for unproduced documents in the production, the Receiving Party may request a reasonable number of hyperlinked documents that are non-public, the Receiving Party believes are relevant to the claim or defenses in this Action, and refer to discrete standalone documents. The Receiving Party will make such requests by providing the Producing Party with a list of hyperlinks and corresponding Bates numbers for the referencing document(s), and the Producing Party will engage in reasonable efforts to locate the hyperlinked document(s) at that pointed to location and either identify it by Bates number or provide any responsive, non-produced and non-privileged documents assuming doing so is not unduly burdensome. The Parties agree to meet and confer in good faith to resolve any disputes concerning the timing and appropriateness of production of those requested documents and communications.

**VIII.   PRODUCTION FORMAT**

1.      Appendix A sets forth technical specifications, including file formats, that the Parties propose to govern the form of production of documents in this litigation. If particular documents warrant a different format, the Parties will meet and confer in an attempt to identify a mutually acceptable format for such production. The Parties agree not to deliberately degrade the search-ability of documents as part of the document production process.

2.      Deduplication of ESI is expected. Should either Party have reasonable concerns about deduplication methods, the Parties agree to meet and confer.

3.      The Parties agree to meet and confer in good faith regarding ESI that is not amendable to the proposed technical specifications before seeking judicial intervention. The

ESI STIPULATION AND [~~PROPOSED~~] ORDER

Parties recognize that certain information to be produced in discovery may warrant production in an alternative form for purposes of depositions and/or trial. The Parties will meet and confer to reach agreement about such form and will seek Court intervention only if necessary.

## IX.    SOURCE CODE AND TRAINING DATA

1.      This Stipulation does not govern the preservation or format for production of source code in this matter. A separate protocol will be entered to address source code. Should a Requesting Party seek production of any repositories beyond a copy of the Books3 dataset, the Parties agree to meet and confer over the production of such information, pursuant to Federal Rules of Civil Procedure 1 and 26.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: April 1, 2026

By:      */s/ Lesley E. Weaver*

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 300
Oakland, CA 94607
Tel. (341) 217-0550
Email: lweaver@stranchlaw.com
         adavis@stranchlaw.com
         jsamra@stranchlaw.com

Joseph R. Saveri (SBN 130064)
Christopher K.L. Young (SBN 318371)
William W. Castillo Guardado (SBN 294159)
Avery M. Wolff (*pro hac vice*)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, CA 94104
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
         cyoung@saverilawfirm.com
         wcastillo@saverilawfirm.com
         awolff@saverilawfirm.com

Karin B. Swope (*pro hac vice*)

- 9 -                                    Case No. 3:25-cv-08862-CRB

Thomas E. Loeser (SBN 202724)
Andrew Fuller (*pro hac vice* to be filed)
Jacob M. Alhadeff (*pro hac vice* to be filed)
**COTCHETT, PITRE & MCCARTHY, LLP**
1809 7th Ave., Ste. 1610
Seattle, WA 98101
Tel: (206) 802-1272
Fax: (206) 299-4184
Email:  kswope@cpmlegal.com
         tloeser@cpmlegal.com
         afuller@cpmlegal.com
         jalhadeff@cpmlegal.com

Joseph I. Marchese (*pro hac vice* to be filed)
Julian C. Diamond (*pro hac vice* to be filed)
Caroline C. Donovan (*pro hac vice* to be filed)
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
Email:  jmarchese@bursor.com
         jdiamond@bursor.com
         cdonovan@bursor.com

*Attorneys for Individual and Representative Plaintiffs E. Molly Tanzer, Jennifer Gilmore, Tasha Alexander, Jon McGoran, and Art Kleiner*

Dated: April 1, 2026            By:      */s/ Christian W. Marcelo*

JOSEPH C. GRATZ (CA SBN 240676)
JGratz@mofo.com
TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, California  94105-2482
Telephone:     415.268.7000
Facsimile:     415.268.7522

CHRISTIAN W. MARCELO, (WA Bar No. 51193) (*pro hac vice*)
CMarcelo@mofo.com
MORRISON & FOERSTER LLP
925 Fourth Avenue, Floor 38
Seattle, WA 98104

TELEPHONE:         206.327.6500

SARA TALEBIAN, (DC Bar No. 1779112)
(*pro hac vice*)
STalebian@mofo.com
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, D.C.  20037
Telephone:     202.887.1500

*Attorneys for Defendant*
SALESFORCE, INC.

\*\*\*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of April, 2026, Oakland, California.

By: */s/ Lesley E. Weaver*
Lesley E. Weaver

Case No. 3:25-cv-08862-CRB
ESI STIPULATION AND [~~PROPOSED~~] ORDER

**IT IS ORDERED.**

DATED: _____April 2, 2026_____          _____

HONORABLE CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

## APPENDIX A

Stipulated Discovery & Search Protocol and Order

## TECHNICAL SPECIFICATIONS FOR PRODUCTION

## PRODUCTION OF EMAIL AND ELECTRONIC DOCUMENTS

For documents that have originated in electronic format, the following specifications should be used for their production.

**Production format**. All documents, except for audio, video, presentations (*e.g.*, Google Slides, PowerPoints), and spreadsheets (*e.g.*, Google Sheets, MS Excel, Numbers), which should be produced natively, shall be produced in multiple page, searchable TIFF format at a resolution of at least 300 dpi in accordance with the below. For documents which already exist in PDF format prior to production (*i.e.*, which the Producing Party receives from a client or third party in PDF format), the Producing Party may provide them in that same PDF format, whether searchable or non-searchable. For documents converted to PDF format prior to production, the Producing Party shall make reasonable efforts to convert to searchable PDF.

**Attachments**. Attachments, enclosures, and/or exhibits to any parent documents shall be produced sequentially after the parent document. Hyperlinked documents shall be treated as described above.

**Production filename.** Each filename must be unique and match the Bates number of the first page of the document. The filename should not contain any blank spaces or special character (*e.g.*, -,.), and should be zero padded (for example ABC0000001). The Parties agree to endeavor to use consistent filename formats between productions.

**Production media and encryption of productions.** Media may be delivered on CDs, DVDs, External USB hard drives, or SFTP, as appropriate. Each media volume should have its own unique name and a consistent naming convention (for example ZZZ001 or SMITH001). The Producing Party shall encrypt the production data using Win RAR or 7-Zip encryption, and the Producing Party shall forward the password to decrypt the production data separately from the CD, DVD, external drive, or FTP to which the production data is saved.

**Searchable text file.** Extracted text for all documents with extractable text should be delivered on a document level in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document. Text files created with optical character recognition (OCR) are only appropriate for electronic documents requiring redaction or documents that do not have extracted text (*e.g.*, JPEG or TIFF files).

**Load Files & Metadata.**

o Files shall be produced along with Concordance/Opticon image load files, with one corresponding entry per document record that indicates the beginning and ending of each document.

o A text cross reference load file should be included with the production delivery that lists the beginning Bates number of the document and the relative path to the extracted or, when appropriate, OCR text file for that document on the production media.

o A delimited database load tile should be provided with each production using the delimiters:

Field Separator, ASCII character 020: "¶"

Quote Character, ASCII character 254 "þ"

Newline Character, crlf

o The delimited database load file should include, where applicable, the following metadata and system fields:

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|---|
| TimeSent | Time Sent | Time (HH:MM:SS format) | To the extent available, the time the email was sent | To the extent available, for email attachments, the time the parent email was sent. |
| BegDoc | Unique ID (Bates number) | Paragraph | The Document ID number associated with the first page of an email | The Document ID number associated with the first page of a document |
| EndDoc | Unique ID (Bates number) | Paragraph | The Document ID number associated with the last page of an email | The Document ID number associated with the last page of a document |
| BegAttach | Unique ID (Bates number) Parent-Child Relationships | Paragraph | The Document ID number associated with the first page of an email | The Document ID number associated with the first page of a document. This does not apply to hyperlinks. |

ESI STIPULATION AND [PROPOSED] ORDER

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|---|
| EndAttach | Unique ID (Bates number) Parent-Child Relationships | Paragraph | The Document ID number associated with the first page of a parent email | The Document ID number associated with the last page of a parent document. This does not apply to hyperlinks. |
| Labels | Labels | Paragraph | Classification labels for data governance | Classification labels for data governance |
| Pages | Pages | Number | The number of pages for an email | The number of pages for a document |
| DateSent | | Date (MM/DD/YYY format) | To the extent available, the date the email was sent | To the extent available, for email attachments, the date the parent email was sent |
| Author | Author | Paragraph | The display name of the author or sender of an email | The name of the author as identified by the metadata of the document |
| To | Recipient | Paragraph | The display name of the recipient(s) of an email | The display name of the recipient(s) of a document (*e.g.*, fax recipients) |
| CC | CC | Paragraph | The display name of the copyee(s) of an email | |
| BCC | BCC | Paragraph | The display name of the blind copyee(s) of an email | |
| Doc Subject | Subject (edoc) | Paragraph | | The subject of a document from entered metadata |
| Email Subject | Subject (e-mail) | Paragraph | The subject line of an email | The subject of a document from entered metadata. |

Case No. 3:25-cv-08862-CRB

ESI STIPULATION AND [PROPOSED] ORDER

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|---|
| Custodian | Custodian | Paragraph | The custodian of an email | The custodian of a document |
| Collaborators | GoogleDrive/Collaborators | Paragraph | | The accounts and groups that have direct permission to edit the file or add comments. |
| Designation | Confidentiality Designation | Paragraph | Identifies whether the record is designated confidential | Identifies whether the record is designated confidential |
| Redaction | Redaction | Paragraph | Identifies whether the record was redacted | Identifies whether the record was redacted |
| ParentFolder | Parent Folder | Paragraph | | Core Property identifying the parent folder |
| SharedDriveID | GoogleDrive/SharedDriveID | Paragraph | | The identifier of the shared drive that contains the file, if applicable. |
| Orig_Path | Original location path | Paragraph | | To the extent possible on an automated basis, original file path to the record; where the document was stored at the time of collection |

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|---|
| Filename | Filename | Paragraph | | The record's original filename |
| Title | GoogleDrive/Title | Paragraph | | The file name as assigned by the user without truncation. |
| Date_LastMod | Date Last Modified | Date (MM/DD/YYYY format) | | To the extent it exists, the date entered in the record's date last modified meta field |
| Time_LastMod | Time Last Modified | Time (HH:MM:SS format) | | To the extent it exists, last modified Time |
| Date_Created | Date Created | Date (MM/DD/YYYY format) | The date entered in the record's date created meta field | To the extent it exists, the date entered in the record's date created metadata field |
| Time_Created | Time Created | Time (HH:MM:SS format) | | To the extent it exists, the time the document was created, entered in the record's time created metadata field |

The Parties are not obligated to include metadata for any document that does not contain such metadata in the original, if it is not possible to automate the creation of metadata when the document is collected.

For documents that have originated in electronic format, the following specifications should be used for their production.

- **Parent and child documents.** Attachments, enclosures, and/or exhibits to any parent documents should also be produced sequentially after the respective parent documents containing the attachments, enclosures, and/or exhibits.

- **Hidden Content.** For any document which the Receiving Party reasonably believes includes hidden content, tracked changes edits, comment, notes, or other similar information viewable within the native file at a Receiving Party's request, the Producing Party will provide the native file, or an image file of a version showing the hidden content, if there is such content.

- **Foreign language documents.** All documents shall be produced in their original language. Where a requested document exists in a foreign language and the Producing Party also has an English-language version of that document prepared for non-litigation purposes prior to filing of the lawsuit, the Producing Party shall produce both the original document and all English-language versions. If the Producing Party has a certified

ESI STIPULATION AND [PROPOSED] ORDER

translation of a foreign-language document that is being produced (whether or not the translation is prepared for purposes of litigation), the Producing Party shall produce both the original document and the certified translation. Foreign language text files and metadata should be delivered with the correct encoding to enable the preservation of the document's original language.

- **Native files.** The Parties will meet and confer to discuss requests for the production of other files in native format. If the Parties are unable to reach agreement, the Parties reserve the right to seek relief from the Court. Documents produced natively shall be represented in the set of imaged documents by a slipsheet indicating the production identification number and confidentiality designation for the native file that is being produced.

- **Requests for hi-resolution or color documents.** The Parties agree to respond to reasonable requests for the production of higher resolution or color images.

**PRODUCTION OF HARD COPY DOCUMENTS**

All documents that are hard copy or paper files shall be scanned and produced in the same manner as documents existing in electronic format, above.