Joseph R. Saveri (SBN 130064)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, CA 94104
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com

Lesley E. Weaver (SBN 191305)
**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 300
Oakland, CA 94607
Tel. (341) 217-0550
Email: lweaver@stranchlaw.com

Karin B. Swope (*pro hac vice*)
**COTCHETT, PITRE & MCCARTHY, LLP**
1809 7th Ave., Ste. 1610
Seattle, WA 98101
Tel: (206) 802-1272
Fax: (206) 299-4184
Email: kswope@cpmlegal.com

*Attorneys for Individual and Representative Plaintiffs E. Molly Tanzer, Jennifer Gilmore, Tasha Alexander, Jon McGoran, and Art Kleiner*
*[Additional counsel on signature block below]*

JOSEPH C. GRATZ (CA SBN 240676)
JGratz@mofo.com
TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
**MORRISON & FOERSTER LLP**
425 Market Street,
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

CHRISTIAN W. MARCELO (WA Bar No. 51193)
(*pro hac vice*)
CMarcelo@mofo.com
**MORRISON & FOERSTER LLP**
925 Fourth Avenue, Floor 38
Seattle, WA 98104
Telephone: 206.327.6500

SARA TALEBIAN, (DC Bar No. 1779112)
(*pro hac vice*)
STalebian@mofo.com
**MORRISON & FOERSTER LLP**
2100 L Street, NW Suite 900
Washington, D.C. 20037
Telephone: 202.887.1500

*Attorneys for Defendant*
SALESFORCE, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

*In re Salesforce LLM Copyright Infringement Litigation*

Master File No. 3:25-cv-08862-CRB

**JOINT CASE MANAGEMENT STATEMENT**

Hearing Date: November 20, 2026
Time: 8:30 AM
Place: Videoconference
Judge: Hon. Charles R. Breyer

**REDACTED**

Pursuant to Civil Local Rule 16-9, the Standing Order for All Judges of the Northern District of California (updated Nov. 30, 2023), and the Court's Scheduling Order (ECF No. 45), counsel for Plaintiffs E. Molly Tanzer, Jennifer Gilmore, Tasha Alexander, Jon McGoran, and Art Kleiner ("Plaintiffs"), and Defendant Salesforce, Inc. ("Salesforce") (collectively, the "Parties") respectfully submit this Joint Case Management Statement in advance of the Case Management Conference on November 20, 2026. The Parties are prepared to appear remotely before the Court on November 20, 2026.

**2. <u>FACTS</u>**

**Plaintiffs' Statement**

The discovery that Salesforce has produced has revealed that Salesforce's piracy extended beyond that which was publicly or previously known. Not only did Salesforce download and copy the Books3 and RedPajama-Books datasets—which alone comprise hundreds of thousands of pirated books—but it also [redacted]. Salesforce employees [redacted] Salesforce also downloaded [redacted]. Plaintiffs informed Salesforce they intend to file an amended complaint to conform to this newly discovered evidence.

Discovery has also confirmed that Salesforce valued books as a source of data. Salesforce used its pirated book collection to experiment on and train its large language models ("LLMs"), and it created a central library of books to use for that purpose. Salesforce categorized the books in its library by topic and genre, such as "Marketing," "Econometrics," and even "Popular"—indicating that Salesforce valued its books for their expressive content.

**Defendant's Statement**

Salesforce respectfully refers the Court to its factual statements in the Joint Case Management Statement and Rule 26(f) Report filed on March 13, 2026 (ECF No. 44), and responds to Plaintiffs' additional assertions as follows. Salesforce disputes Plaintiffs' characterization of the discovery record and their presentation of disputed allegations and inferences as established facts. In particular, the

documents produced do not establish the new allegations Plaintiffs raise. Instead, Plaintiffs present erroneous assumptions and speculation as fact. For instance, Plaintiffs assert that categorizing materials by topic or genre demonstrates that Salesforce valued books for their expressive content. Such categorization reflects nothing more than a method of organizing data—a necessary component of managing any large dataset—and does not support Plaintiffs' inference. Nor do the inferences Plaintiffs draw from the produced documents establish that Salesforce actually downloaded or used books from the newly alleged sources, including Plaintiffs' works. Plaintiffs' assertions overstate what the discovery record establishes.

## 3. <u>LEGAL ISSUES</u>

**Plaintiffs' Statement**

This class action is about Salesforce's mass copyright infringement. The dispositive legal question is whether Salesforce's unlawful acquisition, storage, copying, and use of Plaintiffs' works violated Plaintiffs' and Class members' rights to reproduction and distribution under the Copyright Act, 17 U.S.C. §§ 501, *et seq*.

Salesforce cannot dispute that it copied Plaintiffs' works without license, including works contained in pirated datasets, so it instead claims that its conduct was fair use. ECF No. 31 at 12. But there is no question that Salesforce downloaded Plaintiffs' books from pirated sources to develop its LLMs and integrate the technology into its product offerings. Doing so without authorization, for a commercial purpose, is copyright infringement and manifestly an unfair use. *See, e.g.*, *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001) (affirming no fair use for downloading works). Plaintiffs will also show that Salesforce's use of Plaintiffs' works is non-transformative, because, as found in *Anthropic*, "[p]irating copies to build a research library without paying for it, and to retain copies should they prove useful for one thing or another, was its own use—and not a transformative one." *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1026 (N.D. Cal. 2025). Plaintiffs will also show that Defendant's download, copying, storage, and use of Plaintiffs' works to train their LLMs affects the market for those very works (fair use factor four) because there is an established market for licensing books for use as training data, and because Salesforce sought to develop a tool able to create a potentially

endless stream of competing works that will inevitably harm the market for these books. *See Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1052 (N.D. Cal. 2025).

Mass infringement cases like this one "exemplif[y] the classic litigation that should be certified as a representative action, for the entire class stands aggrieved by defendant's downloading of their books from pirate libraries on the internet." *Bartz v. Anthropic PBC*, 791 F. Supp. 3d 1038, 1045 (N.D. Cal. 2025); *In re Napster, Inc. Copyright Litig.*, 2005 WL 1287611, at *7 (N.D. Cal. June 1, 2005) ("while it is true that proof of ownership, registration, and actual damages ultimately requires a work-by-work inquiry, viewing these determinations as purely 'individual issues' ignores the fact that the claims of every member of the class are uniformly premised upon the uploading or downloading of a copyrighted work by Napster users").

Salesforce's statement below ignores that the *Bartz* Court did indeed certify a class of authors whose works were among the millions of books torrented by Anthropic. *See Bartz*, F. Supp. 3d at 1055. Plaintiffs anticipate doing so here. Further, that Anthropic downloaded and maintained poor metadata for its versions of Books3 has no bearing on whether Salesforce did the same—especially given [redacted]. *Cf. Bartz*, F. Supp. 3d at 1058.

**Defendant's Statement**

The central legal issues are whether Salesforce's development and training of certain large language models ("LLMs") infringed Plaintiffs' copyrights in the asserted works (the "Asserted Works") and, if so, whether Salesforce's challenged uses constitute fair use under 17 U.S.C. § 107. Salesforce denies that it has infringed Plaintiffs' copyrights. Plaintiffs' characterization of Salesforce's conduct as "mass copyright infringement" improperly assumes the very issues that must be established through evidence: whether Salesforce copied any particular Asserted Work, whether Plaintiffs own the relevant exclusive rights, and whether the challenged conduct falls outside the protections of fair use. Plaintiffs' categorical assertion that copying copyrighted materials without authorization for a commercial purpose necessarily constitutes infringement is contrary to established fair use principles and recent decisions addressing LLM training.

Courts have recognized that the use of copyrighted books to train LLMs is "exceedingly transformative" and permissible fair use—even where, unlike here, the models at issue were used for commercial purposes. *See Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1019 (N.D. Cal. 2025) (Alsup, J.); *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1044, 1060 (N.D. Cal. 2025) (Chhabria, J.). As the Department of Justice recently asserted in litigation, the "'training of AI models on copyrighted material' . . . does not violate copyright laws." Statement of Interest of the United States at 3, *In re OpenAI, Inc. Copyright Infringement Litig.*, No. 1:25-md-03143-SHS-OTW (S.D.N.Y. Sept. 1, 2026), ECF No. 1682.

Further, Salesforce's development of its LLMs has caused Plaintiffs no cognizable market harm, including in any purported market for licensing AI training data, because the LLMs at issue have had no effect on any market relevant to the Asserted Works—or on any market at all. *See, e.g.*, *Kadrey*, 788 F. Supp. 3d at 1052 ("Therefore, to prevent the fourth factor analysis from becoming circular and favoring the rightsholder in every case, harm from the loss of fees paid to license a work for a transformative purpose is not cognizable."); *Bartz*, 787 F. Supp. 3d at 1032 (holding that even if a market developed, "such a market for that use is not one the Copyright Act entitles Authors to exploit"). And on the record to date, Plaintiffs have identified no economic injury resulting from the LLMs at issue in this litigation.

Separately, this case is not appropriate for class treatment under Federal Rule of Civil Procedure 23 for the reasons previously stated in the Parties' Joint Case Management Statement and Rule 26(f) Report (ECF No. 44) and for those set out below. Plaintiffs propose to represent "[a]ll legal or beneficial owners of copyrighted works registered with the United States Copyright[] Office that Salesforce downloaded, copied, stored, or otherwise used to develop any of Salesforce's large language models" from October 15, 2022, through the present. ECF No. 23 ¶ 69. This sweeping definition is not limited to any particular collection of books, dataset, acquisition, model, or category of copyrighted works. It necessarily encompasses putative class members whose rights, works, and alleged injuries may differ substantially. Whether Salesforce infringed any particular putative class member's rights would require determining, among other things, ownership and registration status, the nature and scope of the relevant exclusive rights, whether the particular work was present in any dataset used by Salesforce, whether

Salesforce actually copied protected expression from that work, the purpose and circumstances of any challenged use, and the applicability of fair use in each circumstance. Plaintiffs cannot establish commonality, typicality, or predominance merely by alleging that Salesforce engaged in a common course of conduct. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (requiring a rigorous analysis of whether claims are capable of classwide resolution).

Even if Plaintiffs narrowed their class definition to books contained in Books3 or copies thereof—the focus of their current allegations—the only court to consider certification of a Books3 class denied certification. *Bartz v. Anthropic PBC*, No. 3:24-cv-05417-WHA, ECF No. 244, at 10–11 (N.D. Cal. July 17, 2025). Notably, Judge Alsup reached that conclusion notwithstanding undisputed evidence that Anthropic had downloaded 196,640 Books3 records, finding that Books3's deficient metadata, unreliable filenames, and incomplete underlying content made identification of the particular copyrighted works too problematic to support certification. *Id.* at 21–22. Plaintiffs offer no reason to expect a different result here.

## 4. <u>MOTIONS</u>

There are no pending motions at this time. Plaintiffs anticipate filing a motion for leave to amend the Complaint.

Since the Parties' March 13, 2026 Joint Case Management Statement, the Court has ruled on the following motions:

- On June 17, 2026, the Parties filed a joint letter brief regarding Plaintiffs' request that Defendant designate additional documents custodians. ECF No. 57. On July 8, 2026, Magistrate Judge Illman denied Plaintiffs' request. ECF No. 61.

## 5. <u>AMENDMENT OF PLEADINGS</u>

**Plaintiffs' Statement**

Plaintiffs anticipate moving to amend the Complaint to reflect recently produced discovery. *See In re Mosaic LLM Litig.*, No. 24-CV-01451-CRB, 2025 WL 1755650, at *1 (N.D. Cal. June 25, 2025) (granting the plaintiffs' motion to amend to incorporate facts uncovered through discovery). As noted *supra*, recent discovery shows Salesforce acquired copyrighted works from additional data sources not

named in the operative Complaint, including [redacted]. On November 5, Plaintiffs informed Salesforce of their intent to file a motion for leave to amend the Complaint.

**Defendant's Statement**

As discussed above, Salesforce disputes Plaintiffs' characterization of the discovery record and their presentation of disputed allegations and inferences as established facts. Salesforce has requested a copy of Plaintiffs' proposed amended complaint, which Plaintiffs indicated they would provide. To date, Salesforce has not received the proposed pleading and therefore cannot meaningfully assess or respond to Plaintiffs' anticipated amendments. Salesforce reserves all rights to oppose any motion for leave to amend once it has reviewed the proposed pleading and the grounds for amendment.

## 8. <u>DISCOVERY</u>

The deadline for substantial completion of document production was November 7, 2026. ECF No. 45. On November 9, 2026, subject to the parties' agreement, the Court entered a stipulated order extending Salesforce's deadline for substantial completion of source code, training data, and non-custodial ESI to November 30, 2026 and extending substantial completion of documents custodial to three custodians added earlier this month to December 11, 2026. ECF No. 68. Plaintiffs are substantially complete with their productions. The deadline for the close of fact discovery is July 23, 2027.

**a. Plaintiffs' Statement**

Since filing the prior Case Management Statement on March 13, 2026, ECF No. 44, Plaintiffs have worked diligently to seek relevant materials and information from Salesforce. Plaintiffs have served 88 Requests for Production, 11 Interrogatories, and sought inspection of Salesforce's relevant source code and training datasets. In response to Salesforce's discovery requests, Plaintiffs have produced 13,475 documents with over 110,000 pages. Salesforce has proceeded at a prejudicial pace in discovery and has not yet provided perhaps the most important discovery in this case—the datasets used to train Salesforce's LLMs and source code underlying its models. Pursuant to Court order, Salesforce has until November 30 to provide this data, as well as other non-custodial data. ECF No. 68.

Salesforce's productions of documents to date raise concerns that Salesforce is taking an unduly

narrow view of responsiveness and delaying providing substantive discovery. Though Salesforce has produced 235,118 documents, 220,025 are **slipsheets** indicating documents made available for inspection as source code—over 93% of the documents produced to date. In other words, Salesforce has produced only 15,011 documents to date. And of those 15,011 documents, only 1,575 (or 10%) are emails, even though key conversations regarding books datasets occur by email. Separately, approximately 6,000 documents were produced on November 7—the original substantial completion deadline. It has since produced another 1,989 on November 11. A table detailing Salesforce's document production through substantial completion is below:

| Production Vol. | Production Date | Total Documents | Number of Slipsheets | Number of Non-Slipsheet Documents Produced | Percent Slipsheets |
|---|---|---|---|---|---|
| PROD001 | 7/2/2026 | 1 | 0 | 1 | 0% |
| PROD002 | 8/13/2026 | 244 | 71 | 173 | 29% |
| PROD003 | 9/18/2026 | 1,898 | 11 | 1,887 | 0.6% |
| PROD004 | 9/23/2026 | 177,619 | 176,996 | 623 | 99% |
| PROD005 | 10/26/2026 | 1,994 | 52 | 1,942 | 2.6% |
| PROD006 | 10/30/2026 | 2,731 | 2 | 2,729 | ~0% |
| PROD007 | 11/5/2026 | 42,620 | 42,599 | 21 | 99% |
| PROD008 | 11/7/2026 | 6,022 | 294 | 5,728 | 4.9% |
| PROD009 | 11/11/2026 | 1,989 | 0 | 1,989 | 0% |
| TOTAL | 11/13/2026 | 235,118 | 220,025 | 15,093 | 93% |

Further, for numerous agreed-upon search terms, Salesforce has not produced any documents or has produced far fewer documents than what Plaintiffs would have expected to receive based on hit reports provided by Salesforce during the parties' negotiations over those terms. These numbers suggest that Salesforce is withholding a large volume of documents on responsiveness or other grounds.

The glacial speed and limited volume of Salesforce's productions have prejudiced Plaintiffs' ability to prosecute their case. Salesforce has produced only a trickle of emails, failed to produce *any* of the at-issue training data or *any* source code for the at-issue models and, as noted above, will not do so prior to the amended substantial completion deadline. ECF No. 68. While Salesforce claims that this delay results from the Parties' extensive negotiations over the scope of many of Plaintiffs' discovery requests, that is incorrect. Plaintiffs served their First Set of Requests for Production nearly ten months ago, and there has never been a dispute over the core datasets and source code at issue that Salesforce would need to produce (*e.g.* for the models and datasets named in the Complaint). Salesforce's lack of diligence in producing core discovery, and its accompanying excuses, affect the ability of Plaintiffs to meet the deadlines in the case schedule.

Plaintiffs and their expert have also began inspecting source code documents withheld by Salesforce from prior productions—none of those relate to core dataset, training data, or model issues. Much of the source code is consists of publicly available open-source code, raising concerns as to why Salesforce designated it "Highly Confidential – Source Code." That over-designation, of course, required Plaintiffs to engage in the timely inspection process contemplated under the source code protocol. ECF No. 41. The volume of this non-relevant source code also raises serious concerns as to Salesforce's representations during negotiations of search terms—Salesforce, for example, repeatedly referenced high family hit counts when opposing search terms proposed by Plaintiffs. But it now appears these documents could have been categorically excluded from Salesforce's search and production to assist the parties in targeting relevant materials. Salesforce still has not yet made substantive source code available for inspection in this case despite Plaintiffs' requests.

In contrast, Plaintiffs have provided robust discovery in response to Salesforce's requests. Salesforce has served 42 requests for production and 10 interrogatories to date. In an effort to advance negotiations regarding Plaintiffs' search for documents responsive to Salesforce's discovery requests, Plaintiffs accepted search terms proposed by Salesforce that hit on a broad range of documents, which hit on over 420,000 documents. Plaintiffs have diligently worked to review these documents and have

substantially completed their production of documents responsive to Defendants' requests for production. Plaintiffs have produced 13,475 documents consisting of 110,332 pages.

**Defendant's Statement**

Salesforce disagrees with Plaintiffs' characterization of its discovery efforts and their assertion that the pace of production has prejudiced their ability to prosecute this action. Nor does the issue warrant the attention Plaintiffs give it here.

Plaintiffs have served 88 Requests for Production, many of them overbroad, and proposed over 100 search terms so complex that, disaggregated, they amount to several thousand unique searches. Plaintiffs also recently requested three additional custodians, bringing the total to eleven. Salesforce has nonetheless cooperated throughout. After necessary narrowing, Salesforce agreed to produce documents in response to most of the RFPs, accepted and ran most of the proposed search terms, and accepted the three new custodians, adding tens of thousands of documents to their review and prompting the Parties' agreed extension of the substantial completion deadline. That reflects Salesforce's cooperation and diligence, not obstruction.

In any event, Salesforce substantially completed its production of documents from the previously agreed custodians by the original November 7 deadline, producing almost 15,500 non-slipsheet documents and making available for inspection roughly 220,000 additional documents under the source code protocol.

Plaintiffs criticize Salesforce for producing roughly 6,000 documents on the substantial-completion deadline, but Plaintiffs themselves produced roughly 9,500 documents—70% of their entire production—one day earlier. And Plaintiffs' production appears to omit central materials they agreed to produce, including copyright registrations for most of the Asserted Works. The remaining deadlines for source code, training data, and non-custodial ESI (November 30, 2026) and for documents from the three recently added custodians (December 11, 2026) have not yet passed, ECF No. 68, and fact discovery remains open until July 23, 2027.

As to timing, the Parties spent months meeting and conferring over which models, datasets, and associated source code are subject to discovery and reached agreement only a couple of months ago;

naming certain models and datasets in the Complaint did not settle that scope. Salesforce reviewed and produced documents throughout those negotiations, but much of its production could not be finalized until the scope was resolved.

Plaintiffs likewise ignore the substantial time and effort required to locate, collect and review at-issue training data and model source code. Locating and collecting datasets and code created years ago—sometimes contained in repositories with terabytes of data—and preparing them for inspection under safeguards appropriate to proprietary materials, requires significant technical work. Salesforce is completing that work under the stipulated November 30 deadline. ECF No. 68.

Finally, the slipsheets Plaintiffs highlight identify source code documents made available for inspection under the source code protocol, which Plaintiffs and their expert have already begun inspecting. They are not documents withheld from discovery nor are they meaningless in terms of the time and burden to collect, review and produce.

## 12. SETTLEMENT AND ADR

The parties have agreed to proceed with private mediation to commence at or around close of fact discovery and intend to continue to meet and confer on a mediation plan.

Dated: November 13, 2026

By: *_/s/ Lesley E. Weaver_*

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 300
Oakland, CA 94607
Tel. (341) 217-0550
Email: lweaver@stranchlaw.com
adavis@stranchlaw.com
jsamra@stranchlaw.com

Joseph R. Saveri (SBN 130064)
Christopher K.L. Young (SBN 318371)
Ivy Arai Tabbara (*pro hac vice*)*
William W. Castillo Guardado (SBN 294159)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, CA 94104

Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
itabbara@saverilawfirm.com
wcastillo@saverilawfirm.com

Avery M. Wolff (*pro hac vice*)
**SAVERI LAW FIRM, LLP**
780 Third Avenue, Suite 1200
New York, NY 10017
Telephone: (347) 790-0069
Facsimile: (347) 790-0029
Email: awolff@saverilawfirm.com

Karin B. Swope (*pro hac vice*)
Andrew Fuller (*pro hac vice*)
Jacob M. Alhadeff (*pro hac vice*)
Ellen J. Wen (*pro hac vice*)
**COTCHETT, PITRE & MCCARTHY, LLP**
1809 7th Ave., Ste. 1610
Seattle, WA 98101
Tel: (206) 802-1272
Fax: (206) 299-4184
Email: kswope@cpmlegal.com
afuller@cpmlegal.com
jalhadeff@cpmlegal.com
ewen@cpmlegal.com

Joseph I. Marchese (*pro hac vice* to be filed)
Julian C. Diamond (*pro hac vice* to be filed)
Caroline C. Donovan (*pro hac vice* to be filed)
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
Email: jmarchese@bursor.com
jdiamond@bursor.com
cdonovan@bursor.com

*Attorneys for Individual and Representative Plaintiffs E. Molly Tanzer, Jennifer Gilmore, Tasha Alexander, Jon McGoran, and Art Kleiner*

By: */s/ Christian W. Marcelo*

JOSEPH C. GRATZ (CA SBN 240676)
JGratz@mofo.com
TIFFANY CHEUNG (CA SBN 211497)

TCheung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

CHRISTIAN W. MARCELO, (WA Bar No. 51193)
(*pro hac vice*)
CMarcelo@mofo.com
MORRISON & FOERSTER LLP
925 Fourth Avenue, Floor 38
Seattle, WA 98104
Telephone: 206.327.6500

SARA TALEBIAN, (DC Bar No. 1779112)
(*pro hac vice*)
STalebian@mofo.com
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, D.C. 20037
Telephone: 202.887.1500

*Attorneys for Defendant*
SALESFORCE, INC.

**E-FILING ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

*_/s/ Lesley E. Weaver_*
Lesley E. Weaver